**Edward HEINRICH et al., Appellants,**

v.

**Harold HINSON et al., Respondents.**

**No. WD 30690.**

Missouri Court of Appeals,
Western District.

June 9, 1980.

Ira K. Witschner, Lynn B. Nelson, Kansas City, for appellants.

Joel Pelofsky, Miniace & Pelofsky, Kansas City, for respondents.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

SOMERVILLE, Judge.

A dispute between lessors and a sub-lessee culminated in the filing of a five-count petition by the lessors (plaintiffs) against the sub-lessee (defendant Hinson) and the sub-lessor (defendant Super Market Developers, Inc.) for injunctive relief (Counts I and III), damages (Counts II and IV), and cancellation of the original lease (Count V). The five-count petition filed by the plaintiffs evoked separate counterclaims containing two counts from each defendant. The various counts of the plaintiffs' petition, as well as the various counts of both counterclaims, along with the relief prayed for, will be elaborated on after laying a factual background to put them in better perspective.

Lessors are the owners of a tract of land situated at the southwest corner of the intersection of Blue Ridge Road and Bannister Road, Kansas City, Missouri. In 1955 the lessors entered into a lease with the original lessee for a portion of the overall tract. The lease was for a term of twenty years and contained three renewal options of five years each. The leased tract was unimproved and was acquired by the original lessee for the purpose of erecting a building thereon for the operation of a grocery store. The building erected on the leased premises faced Blue Ridge Road. Land retained by the lessors adjoined the leased tract on the north, west and south. Under the terms of the lease, lessee was also granted an easement for "parking" on certain portions of plaintiffs' land adjoining the leased premises and reference was made to a strip of land fifteen feet in width running parallel to the south line of the leased premises reserved by the plaintiffs for "driveway purposes".

Defendant Super Market Developers, Inc., assignee of the original lease, sublet the premises to defendant Hinson in 1963. Earlier in 1963 it was discovered that the south wall of the grocery store building on the leased premises encroached upon the land retained by plaintiffs for "driveway purposes" a distance of four and six-tenths feet and that a structure attached to the south wall of said building encroached even farther upon the driveway area. The land abutting the plaintiffs' tract of land on the south was owned by defendant Hinson. The plaintiffs and defendant Hinson, in order to resolve a number of uncertainties and differences which had erupted, entered into a written "Agreement" dated May 25, 1963, which, among other things, provided that defendant Hinson would "make provisions" during the term of the lease for the continuous use by the plaintiffs of a "strip of land" along said south line of the leased premises not less than fifteen feet in width in order for plaintiffs to have uninterrupted access to land retained by them adjoining the leased premises on the west. The written "Agreement" clearly contemplated that a portion of the fifteen foot "strip of land" was located on land owned by defendant Hinson adjacent to the south line of plaintiffs' tract of land. The written "Agreement" also recognized that defendant Hinson had the right to utilize a "septic line and tank" located on land owned by the plaintiffs adjoining the leased premises on the north and that defendant Hinson agreed to keep the "septic line and tank" in "good repair and free of filth" and to maintain the ground and area around it.

At the time the written "Agreement" was entered into there was a "lean-to roof" tacked onto the south side of the grocery store building over a meat cooler which encroached upon the fifteen foot area originally reserved by plaintiffs for "driveway purposes". Sometime after the written "Agreement" was entered into defendant Hinson closed in the "lean-to roof" on the south side of the grocery store building to meet "Health Department" requirements because the meat cooler, as located, was indispensible to the operation of a grocery store on the leased premises. The record, at best, is confusing in toto and beset with uncertainty by reason of certain contradictory evidence as to whether defendant Hinson's "closing in" of the "lean-to roof" after the May 25, 1963, written "Agreement" was entered into constituted a further encroachment upon both the fifteen foot area originally reserved by plaintiffs for "driveway purposes" and the additional area on defendant Hinson's land to the south for use by plaintiffs for "driveway purposes" as provided for in the written "Agreement".

Getting back to the "septic line and tank", plaintiffs, at some point of time subsequent to the May 25, 1963, written "Agreement", refused to let defendant Hinson come upon their premises to repair or maintain it with the result that it became inoperable. Although there was a sewer connection in the southwest corner of the grocery store building, employee restrooms located in the northwest corner of the building were connected to the "septic line and tank". The evidence disclosed that it would be more convenient and less expensive for defendant Hinson to run a new sewer line along the west side of the leased premises on land retained by the plaintiffs to service the restrooms as opposed to repairing the "septic line and tank" or running a sewer line inside the building from the restroom area to the sewer connection located in the southwest corner of the building. During the trial the plaintiffs testified that they no longer objected to defendants' use of the "septic line and tank" and would not interfere with his right to come upon their land for the purpose of repairing and maintaining the same.

Another shed erected by Hinson was attached to the north side of the grocery store building and encroached on land owned by the plaintiffs which adjoined the leased premises on the north. The plaintiffs continued to accept rental payments under the lease from 1963 on and never complained to defendant Hinson about the encroachments. Although they consulted their own lawyer about them, approximately seven years elapsed before the lawsuit in question was filed.

Count I of the plaintiffs' petition prayed for a mandatory injunction compelling defendant Hinson to remove the structure attached to the south side of the grocery store building and Count II prayed for damages occasioned thereby; Count III prayed for a mandatory injunction compelling Hinson to remove the structure attached to the north side of the grocery store building and Count IV prayed for damages occasioned thereby; and Count V prayed for cancellation of the lease on grounds of "forfeiture".

Hinson in Count I of his counterclaim prayed for injunctive relief, to wit, that plaintiffs be enjoined from interfering with his use of and right to repair and maintain the "septic line and tank", or, in the alternative, for an easement to construct a sewer line on plaintiffs' property adjacent to the west boundary of the leased premises to connect the employees' restrooms with the sewer outlet located in the southwest corner of the building; and Count II prayed for damages occasioned thereby. Both counts of the counterclaim of defendant Super Market Developers, Inc., were of like tenor.

Trial by jury as to the damage counts was waived and all counts were tried to the court by agreement.

Judgment was entered in favor of defendants Hinson and Super Market Developers, Inc., and against the plaintiffs, on Count I of plaintiffs' petition, conjoined with a judgment provision ordering defendant Hinson to grant to the plaintiffs an easement "of no less than 20 feet over the north 20 feet" of the property owned by

defendant Hinson adjacent to the south property line of the leased premises for the "sole purpose of providing plaintiffs access to their property" lying west of the leased premises, said easement to "terminate at such time as the plaintiffs take possession" of the leased premises; judgment was entered in favor of defendants Hinson and Super Market Developers, Inc., and against the plaintiffs on Count II of the plaintiffs' petition; judgment was entered in favor of the plaintiffs and against defendants Hinson and Super Market Developers, Inc., on Count III of the plaintiffs' petition and defendants were ordered to remove the encroaching structure attached to the north side of the grocery store building and plaintiffs were awarded attorney fees in the amount of $2,680.00; and judgment was entered in favor of defendants Hinson and Super Market Developers, Inc., and against the plaintiffs under Counts IV and V of plaintiffs' petition.

Judgment was entered in favor of defendant Hinson and against the plaintiffs on Count I of Hinson's counterclaim, to wit, plaintiffs were ordered to "allow" Hinson to install a sewer line "at a location of no more than four feet west of the leased building . . . extending from the northwest corner of the building to the southwest corner of the building where the sewer line is to be tied into the main sewer line"; and judgment was entered in favor of plaintiffs and against defendant Hinson on Count II of Hinson's counterclaim. Judgment was entered in favor of plaintiffs and against defendant Super Market Developers, Inc., on Counts I and II of defendant Super Market Developers, Inc.'s, counterclaim.

Plaintiffs alone have appealed. The points they rely on, three in number, are tightly circumscribed as they are directed solely to the judgment entered with respects to Counts I and V of their petition and the judgment entered with respect to Count I of defendant Hinson's counterclaim. The points relied on by plaintiffs are as follows: (1) the trial court erred in denying plaintiffs' prayer for a mandatory injunction ordering defendant Hinson to re-

move the structure attached to the south side of the grocery store building because said structure encroached upon land owned by plaintiffs adjacent to the leased premises; (2) the trial court erred in ordering plaintiffs to "allow" Hinson to install a sewer line on land owned by plaintiffs adjoining the leased premises on the west because doing so constituted a "taking of private property for a private use" in violation of Mo.Const.Art. I, § 28 (1945); and (3) the trial court erred in refusing to "order a forfeiture" of the lease because the encroaching structure attached to the south side of the grocery store building constituted a violation of the terms of the lease.

The scope of appellate review of this court tried case is circumscribed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976): "Accordingly, appellate 'review * * as in suits of an equitable nature,' as found in Rule 73.01, is construed to mean that the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law."

The judgment rendered by the trial court on Count I of plaintiffs' action comported with the written "Agreement" entered into on May 25, 1963, and is therefore immune from plaintiffs' present attack. Moreover, apart from the written "Agreement", point (1) relied upon by plaintiffs lends itself to being disposed of adversely to them by recognition and application of the established principle that "[w]hether a mandatory injunction to compel the removal of a part of a building which encroaches upon land of another should be granted is a matter of discretion of the chancellor in balancing the equities . . . [and] [t]he 'strong arm of equity' is to be applied with caution and is to be used sparingly." *Keokuk Investment Co. v. Doerhoff*, 530 S.W.2d 507, 509 (Mo.App. 1975). In "balancing the equities" consideration is given to all the equities between

the parties as disclosed by the circumstances of each particular case and the conflicting conveniences of the respective parties, the willfulness of the encroaching party, and the conduct of the party whose land has been encroached upon regarding acquiescence and laches are some of the factors to be weighted in "balancing the equities". *Hanna v. Nowell*, 330 S.W.2d 595, 603 (Mo. App.1959). The judgment of the trial court may also be said to reflect a proper balancing of the equities in light of the totality of the circumstances.

■ The judgment in favor of defendant Hinson and against plaintiffs on Count I of defendant Hinson's counterclaim ordering plaintiffs to "allow" Hinson to install a sewer line on their property west of the leased premises cannot be justified under the terms of the written "Agreement" of May 25, 1963, and, as plaintiffs contend, constitutes a taking of private property for private use in violation of Mo.Const.Art. I, § 28 (1945). Although the written "Agreement" dated May 25, 1963, recognized that defendant Hinson had the right to utilize the "septic line and tank" located on land owned by the plaintiffs adjacent to the leased premises north of the grocery store building and that Hinson agreed to repair and maintain the "septic line and tank", it did not purport to give defendant Hinson an easement to construct a sewer line on land owned by plaintiffs west of the leased premises.

Mo.Const.Art. I, § 28 (1945) is captioned "Limitation on taking of private property for private use—exceptions—public use a judicial question", and reads as follows: "Section 28. That private property shall not be taken for private use with or without compensation, unless by consent of the owner, except for private ways of necessity, and except for drains and ditches across the lands of others for agricultural and sanitary purposes, in the manner prescribed by law; and that when an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be judicially determined without regard to any legislative declaration that the use is public."

■ The written "Agreement" dated May 25, 1963, cannot be tortured into a "consent" by the plaintiffs for defendant Hinson to construct a sewer line on their property west of the leased premises. Assuming for the sake of argument, although expressly refraining from deciding, that easements for sewers fall within the general purview of "ways of necessity", there would still be no escape from the general proposition that convenience alone will not justify a way of necessity. *Missouri State Oil Co. v. Fuse*, 360 Mo. 1022, 232 S.W.2d 501 (1950); *George v. Crosno*, 254 S.W.2d 30 (Mo.App.1952); and *Schnider v. M.E.H. Realty Inv. Co.*, 239 Mo.App. 546, 193 S.W.2d 69 (1946). As recognized in *Henderson v. La Capra*, 307 S.W.2d 59, 64 (Mo.App.1957), one is not entitled to an easement "as a way of necessity" if he can provide a "substitute way" on his own land and "this is true even if the substituted way is less suitable, quite inconvenient and involves substantial cash outlay". Defendant Hinson, by his own testimony, admitted that the restrooms located in the northwest corner of the grocery store building could be connected to the sewer outlet located in the southwest corner of the building but that doing so would be more inconvenient and expensive than installation of a sewer line on plaintiffs' property along the west side of the building.

Regarding "drains and ditches across the lands of others for agricultural and sanitary purposes" as used in Mo.Const.Art. I, § 28 (1945), *supra*, it was said in *Grand River Drainage Dist. v. Moseley*, 220 S.W. 886, 887 (Mo.1920), with reference to the same language employed in Mo.Const.Art. 2, § 20 (1875), "that the words 'for sanitary and agricultural purposes.' of and within themselves, mean for public purposes . . . the Constitution of Missouri, in express terms authorizes the taking of land 'for drains and ditches across the lands of others for agricultural and sanitary purposes', etc., but nowhere uses the words 'for public purposes'; for those purposes are public, and cannot be used within the meaning of the

Constitution, without they mean for public purposes." *State ex rel. Gove v. Tate*, 442 S.W.2d 541 (Mo. banc 1969), indirectly sheds some further light on the basic issue at hand. There, a city's attempt via condemnation to appropriate private property for a sewer easement for the benefit of a private party and his permittees was prohibited on the ground that it constituted a taking of private property for private use.

■ For reasons heretofore stated, the judgment rendered by the trial court on Count I of defendant Hinson's counterclaim cannot stand and must be reversed. However, in view of (1) the written "Agreement" dated May 25, 1963, (2) defendant Hinson's testimony at trial that plaintiffs refused to let him come upon their property to repair and maintain the "septic line and tank", and (3) plaintiffs' apparent change in attitude as evidenced by their testimony at trial that they did not object to defendant Hinson's use of the "septic line and tank" and would not interfere with his right to repair and maintain the same, this cause is remanded to the trial court with directions to enter a new judgment on Count I of defendant Hinson's counterclaim granting defendant Hinson, during the term of the lease as extended by the exercise of any renewal options, the right to use, repair and maintain the "septic line and tank" and to enjoin plaintiffs from interfering with defendant Hinson's exercise of such rights, all in accordance with such reasonable terms and conditions as may be fixed by the trial court in order to allay further controversy and to insure that the parties are fully aware of the scope of their respective rights and duties.

■ Plaintiffs' third and final point, error on the part of the trial court in refusing to "order a forfeiture" of the lease because the encroaching structure attached to the south side of the grocery store building constituted a violation of the terms of the lease, is not well taken in light of affirmance of the judgment rendered by the trial court on Count I of the plaintiffs' petition. Moreover, assuming, arguendo, that the complained of structure constituted an encroachment entitling plaintiffs to injunctive relief, forfeiture of the lease would not follow as plaintiffs waived any right to declaration of a forfeiture by continued acceptance of the rental payments with knowledge of the encroachment. *Independence Flying Service, Inc. v. Abitz*, 386 S.W.2d 399, 404–05 (Mo.1965); *Frank v. Dodd*, 130 S.W.2d 210, 215 (Mo.App.1939), and *Board of Trade Office Bldg. Co. v. Shannon Grain Co.*, 233 Mo.App. 1199, 21 S.W.2d 913, 915 (1929).

The judgment of the trial court with respect to all counts of plaintiffs' petition is affirmed; the judgment of the trial court with respect to Count I of defendant Hinson's counterclaim is reversed and the cause is remanded to the trial court with directions to enter a new judgment in favor of defendant Hinson and against plaintiffs on Count I of defendant Hinson's counterclaim in accordance with this opinion.

Affirmed in part and reversed and remanded in part with directions.

All concur.