**BANYAN CONSTRUCTION COMPANY, INC., Plaintiff–Appellant,**

v.

**UNION ELECTRIC COMPANY, Defendant–Respondent.**

No. 61377.

Missouri Court of Appeals, Eastern District, Division Two.

Nov. 10, 1992.

Curtis, Oetting, Heinz, Garrett & Soule, P.C., Carl J. Lumley, Clayton, for plaintiff-appellant.

Armstrong, Teasdale, Schlafly & Davis, Theodore H. Hellmuth, Ann E. Buckley, St. Louis, for defendant-respondent.

PUDLOWSKI, Judge.

Appellant Banyan Construction Company built a duplex that encroached on Respondent Union Electric Company's transmission line easement. Banyan appeals the trial court's grant of Union Electric's motion for summary judgment. We affirm.

Banyan initially acquired the original parcel of real estate in St. Louis County in March 1987, and constructed thereon a sixteen unit townhome development known as Banyan Townhomes. Union Electric owned a nearby substation and many of the properties surrounding the development. In March 1988, Banyan acquired from Union Electric a "triangular tract" of land that adjoined the original parcel to the southwest. Abutting the original parcel of real estate on the east was a section of Old Fee Fee Road that was vacated by St. Louis County in June 1988. Reversionary interests in this parcel, referred to in this case as the ".53 acre," were left to Banyan and Union Electric as the adjoining property owners. On July 1, 1988, Banyan acquired Union Electric's interest in the .53 acre by quitclaim deed. On that same day, Banyan granted Union Electric a transmission line easement over the .53 acre, which is the focus of this case. The acquisition of the triangular tract and the .53 acre was negotiated as a package for which Banyan paid Union Electric $20,000.

The electrical transmission easement that Banyan granted to Union Electric was Union Electric's standard form for such easements. Negotiations over this easement were carried on and evidenced by a letter dated March 12, 1987, from Don Niemeyer, a Union Electric representative, to Bud Micelli, Banyan's president. Micelli signed the easement, and his attorney notarized it. The one hundred fifty foot wide easement ran northwesterly across the northeastern most portion of the .53 acre.

The acquisition of the .53 acre allowed Banyan to construct a seventeenth unit on the easternmost edge of the original parcel in mid–1989. Banyan also decided to build one duplex, units eighteen and nineteen, on the northernmost portion of the .53 acre. Prior to this time, Banyan had no plans to build on the .53 acre.

Banyan knew that before building it should request easement releases from all utilities who had easements over the construction area. By the time construction of units eighteen and nineteen began, however, Banyan maintained it had forgotten about the transmission line easement. Banyan began construction of the duplex in March 1990.

In preparation for this construction Banyan sought surveys and title commitments. Banyan's engineers and surveyors prepared sketches showing the additional units and existing easements. The drawings did not, however, show Union Electric's transmission line easement. Banyan also secured a title commitment for the .53 acre. Again, the transmission line was not listed as an encumbrance. There were also several instances of contact between Banyan and Union Electric or third parties regarding the duplex. These facts will be developed in the context of the relevant points on appeal.

On April 26, 1990, Banyan contacted Lee Baalman, a Union Electric employee, for assistance regarding a drainage swale in connection with the construction on the .53 acre. The next day, Baalman spoke with Banyan's attorney, Michael Kern and stated his concern that Banyan was building on the easement. Baalman informed Kern that Union Electric had a transmission line easement over the .53 acre, and that Banyan should request release of the easement. Because the shell of the duplex was substantially complete and encroached nearly fifty feet onto the easement, Banyan immediately requested release of the transmission line easement.

On July 18, 1990, Union Electric advised Banyan that it would not release the easement. Union Electric determined that although the duplex was not located on the centerline of the easement, where the transmission lines would likely run, it lay within fifty feet of the centerline. Union Electric also based its refusal to release on the uncertainty of future disputes and the importance of maintaining flexibility to install future lines. Releasing any of the easement was unacceptable to Union Electric. Thus, Union Electric demanded that Banyan remove the duplex from the .53 acre.

Banyan incurred many construction and legal expenses. In order to make the duplex weathertight, Banyan continued construction after Union Electric's demand for removal. Banyan expected to make a profit on the sale of units eighteen and nineteen, but now believes its return will be diminished. Banyan brought suit in the Circuit Court of St. Louis County.

In the trial court, Banyan sought a declaration of its right to complete the building in count I of its petition. Banyan also claimed damages against Union Electric for tortious interference with Banyan's effort to complete and sell the units in count II and for Union Electric's breach of the easement contract in count III. Union Electric counterclaimed for a declaration that the easement remained in full force and effect and that the duplex constituted an illegal encroachment on the easement and must be removed. Union Electric also sought an injunction compelling Banyan to remove the duplex. Cross motions for summary judgment were submitted based upon depositions, joint stipulations and affidavits. On December 5, 1991, the trial court granted judgment in favor of Union Electric

Company on all counts. Banyan appeals alleging four points of error.

■ Review of summary judgment is equivalent to review of a court-tried case and if, as a matter of law the judgment is sustainable on any theory, it will be sustained. *J.R. Green Properties, Inc. v. Meixner,* 778 S.W.2d 342, 343 (Mo.App. 1989). A genuine issue of material fact, which would preclude the entry of summary judgment, does not exist where the case was submitted to the trial court on cross motions for summary judgment supported by stipulations of fact and affidavits. *Id.* The entry of summary judgment by the trial court in court-tried cases of an equitable nature will be sustained, therefore, unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Cervantes v. Ryan,* 799 S.W.2d 111, 115 (Mo.App.1990) *(reh'g, transfer denied* 1990).

■ In its first point, Banyan argues that the trial court erroneously granted summary judgment in favor of Union Electric and against Banyan on count I of Banyan's petition and on Union Electric's counterclaims because that judgment is inequitable, incorrectly applies the law, is not supported by substantial evidence, and is against the weight of the evidence. Banyan asserts that the easement permits structures which do not interfere with Union Electric's reasonable use of the easement, and Banyan's building does not interfere with Union Electric's reasonable use of the easement.

The transmission line easement sets forth Union Electric's rights and establishes limitations on Banyan's rights. The easement language provides:

> ... the perpetual right, ... in Grantee to survey, stake, construct, reconstruct, erect, place, keep, operate, maintain, inspect, patrol, add to the number of and *relocate at will, at any time,* and from time to time, in, on, upon, along, over, through, across, and under the herein described easement a line or lines of towers, poles, conduits and appurtenances, crossarms, wires, cables, transformers, anchors, guy wires, foundations, footings, and any other appurtenances....
>
> \* \* \* \* \* \*
>
> The grantor agrees that it will not erect any building or structure or create or permit any hazard or obstruction of any kind or character which, *in the judgment of Grantee,* will interfere with the surveying staking, construction, reconstruction, erection, placement, retention, operation, maintenance, inspection, patrolling, addition to and relocation of, Grantee's facilities.

(emphasis added). Banyan contends that, notwithstanding this language, the easement permits structures which do not interfere with Union Electric's reasonable use of the easement and that the duplex does not violate this limitation.

We recognize the proposition that an owner of land may use his property in any manner not inconsistent with the easement granted. *Mississippi River Transmission v. Wachter Const.,* 731 S.W.2d 445 (Mo. App.1987). We disagree with Banyan's interpretation of the easement language, however, and also find that the construction of the duplex was inconsistent with or interfered with Union Electric's reasonable use of the easement.

The language of the easement reserves the perpetual right to relocate anywhere within the easement any of the fixtures or lines listed. Union Electric also reserved the right to use its own judgment in determining whether any structure would interfere with its operations. There is no evidence that Union Electric acted in bad faith or with an improper motive in determining that the duplex would interfere with its use of the easement. These clauses severely restrict Banyan's ability to build on the easement.

Banyan relies on *Baum v. Glen Park Properties,* 660 S.W.2d 723 (Mo.App.1983), and *RFS, Inc. v. Cohen,* 772 S.W.2d 713 (Mo.App.1989), to support its position that property owners subject to an easement may erect structures which do not interfere with the reasonable enjoyment of the easement. In *Baum,* the court allowed a land-

owner to plant trees and erect signs within a forty foot wide easement because the easement holder only needed a twenty foot wide path on which the signs and trees did not encroach. In *RFS, Inc.,* improvements proposed by the landowner to its shopping center would not result in interference with the adjoining shopping center's enjoyment of the access easement.

The language of the easement controls the rights and relationship of landowner and easement holder. *Baum* and *RFS, Inc.* are not controlling because the easement granting language in *Baum* and *RFS, Inc.* was limited and general. The language in this case was extensive and specifically restricted construction. Neither the *Baum* nor the *RFS, Inc.* easement placed the determination of encroachment in the judgment of the grantee as did the Union Electric easement. Also, the Union Electric easement specifically authorized relocation of Union Electric's facilities within the easement.

Furthermore, the *Baum* and *RFS, Inc.* easements were for ingress and egress. In this case, the easement was for the present and future construction and maintenance of electrical transmission lines and other appurtenances. The necessity of an electric utility to maintain maximum flexibility within its easement for the location of transmission lines is distinguishable from the sides of roadways being free of trees and signs. In a utility case more on point, *Miss. River Transmission,* 731 S.W.2d at 449, this court held that landowner's construction of a parking lot over a gas pipeline easement substantially interfered with the easement holder's reasonable enjoyment of the easement. Because the Union Electric easement clearly limited construction and was for a different purpose, we decline to apply the equitable principles of *Baum* and *RFS, Inc.* to the unbefitting facts of this case.

Finally, contrary to Banyan's assertion, there was substantial evidence that the duplex will interfere with Union Electric's reasonable use of the easement. Although the duplex may not now block the actual

path of transmission lines, there may be a need to relocate or add to the transmission lines. The letter from Niemeyer to Micelli stated Union Electric's plans "to construct future transmission line facilities ... across our portion of [the easement]." Also, affidavit testimony of a Union Electric engineer laid out the future plans to route larger transmission capacity through the easement. Considering these facts in light of Union Electric's stated concern about the uncertainty surrounding future disputes, it would be an unreasonable interference with the easement to allow the duplex to remain.

The *Miss. River Transmission* court denied landowners argument that there was no reasonable interference because the possibility of any problems happening with the pipeline was remote. Likewise, we deny Banyan's argument that there is no reasonable interference if there are not any problems at this moment. The trial court correctly applied the law and considered the equities.

■ Banyan's second point states that the easement requires Union Electric to make a determination of whether a structure will interfere with its reasonable use of the easement within a reasonable time. Banyan argues that the trial court erred in entering summary judgment in favor of Union Electric because Union Electric did not raise any objection to Banyan's building until after a reasonable time had elapsed.

For Union Electric to be able to determine that the duplex interferes with its reasonable use of the easement within a reasonable time, Banyan must show that Union Electric had knowledge of the duplex on the easement and failed to timely object. Banyan cites several instances of contact with various departments of Union Electric before and during the construction of the duplex in an attempt to make this showing. Assuming that Union Electric would have a duty to timely notify Banyan if it had knowledge of the encroachment,[1]

---

1. We question, without deciding, whether Union

Electric has a duty to notify Banyan in the

each of the following contacts is inadequate either because the facts do not give rise to a duty or Union Electric did not have sufficient knowledge.

On October 18, 1989, Banyan's surveyor asked Union Electric's Transmission and Distribution Administration Department to locate Union Electric's facilities on or near the .53 acre. Although this request generally indicates an intent to build, it told Union Electric nothing specific about Banyan's construction plans. It did not request release of easements and was not sufficient to put Union Electric on notice that a duplex would be built on its easement such that a duty would arise.

■ On October 31, 1989, Union Electric's Residential Marketing Department received notice from the St. Louis County Planning Commission, not Banyan, that the .53 acre was the subject of a request for permission to build attached single family and multiple family dwellings. This zoning notice did not give rise to a duty to investigate and warn of easements because nothing in the notice would have advised Union Electric of Banyan's plans to build on the easement. The usual method of notification is through a landowner's request for an easement release.

■ On November 27, 1989, Banyan provided Union Electric's Residential Marketing Department with site and grading plans showing the proposed construction of units eighteen and nineteen on the .53 acre tract in conjunction with a request for electric service to these units. This plan showed every easement except for the transmission line easement. In late December 1989, plans were prepared by Union Electric's Dorsett District for electric service to units eighteen and nineteen. On April 25, 1990, Union Electric and Banyan signed a contract for electric service to these units. These plans did not alert Union Electric to a possible encroachment on its transmission line easement. Also, Union Electric's Residential Marketing Department was not involved in easement releases. These plans did not establish knowledge and a corresponding duty to investigate and warn of easements.

■ On March 20, 1990, Banyan's surveyor requested Union Electric's Real Estate Department to release a different ten foot wide distribution easement. The request was approved and the distribution easement was released on April 26, 1990. The transmission line easement was not released at that time. Banyan asserts that Union Electric took into account the transmission line easement in deciding to release the distribution easement even though the record is not clear on which employees had knowledge of which easement and the construction at what point in time. Also, any delay that may have occurred over the nine days before the distribution easement was released on April 26, 1990 was not unreasonable, especially in view of the fact that Union Electric notified Banyan about the transmission easement on the day after a decision was made to release the distribution easement.

Furthermore, at no time during this period did Banyan request a release of the transmission easement even though it had been granted to Union Electric less than a year earlier. Banyan's forgetfulness does not shift the risk of not timely discovering easement violations to Union Electric. Where there is not clear evidence of knowledge of the easement violation or facts giving rise to a duty to investigate, we will not be an "indulgent guardian which [goes] to the romantic length of giving protection against the consequences of indolence, folly, or careless indifference...." *Dickinson v. Bankers Life & Casualty Co.*, 283 S.W.2d 658, 663 (Mo.App.1955). The trial court did not erroneously grant summary judgment in favor of Union Electric because Union Electric did not unreasonably delay in notifying Banyan of the encroachment on the easement.

absence of a request to release. Banyan cites no case law, other than general principles of contract law on implied reasonable times for performance, in support of the proposition that

Union Electric should have notified Banyan within a reasonable time after Union Electric knew the easement was being encroached.

In its final two points, Banyan argues that the trial court erroneously granted summary judgment in favor of Union Electric and against Banyan on count II and III of Banyan's petition and erroneously denied Banyan's motion for separate trial. Banyan asserts that Union Electric's demand that Banyan remove the building constituted both a tortious interference with Banyan's business expectancy and a breach of the easement contract and has caused Banyan substantial damage.

Affirming the trial court's grant of summary judgment under the first two points allows us to dispose of the final two points without extended discussion. Essential to both a tortious interference claim and a breach of easement contract claim in this case is an unjustified demand for removal or an unreasonable delay in objecting to construction. *See Community Title Co. v. Roosevelt Fed. Sav. and Loan Ass'n,* 796 S.W.2d 369, 372 (Mo.1990). Under the first two points we found that the demand was justified and that Union Electric did not unreasonably delay its objection. Thus, Banyans third and fourth points are denied. The trial court properly granted summary judgment in favor of Union Electric because the judgment correctly declared and applied the law, was supported by substantial evidence, and was not against the weight of the evidence.

The judgment of the trial court is Affirmed.

CRANDALL, P.J., and GRIMM, J., concur.