Mamie **SEGRAVES**, Respondent,

v.

**CONSOLIDATED ELECTRIC COOPERATIVE,** Appellant.

No. 65444.

Missouri Court of Appeals, Eastern District, Northern Division.

Jan. 17, 1995.

Lawrence W. Ferguson, Columbia, for appellant.

Walter D. McQuie, Jr., Montgomery City, for respondent.

Before CRANDALL, P.J., and DOWD and WHITE, JJ.

DOWD, Judge.

Consolidated Electric Cooperative (Consolidated) appeals from the trial court's judgment awarding Mamie Segraves treble damages for the trees it removed from her yard. We affirm.

Segraves filed suit against Consolidated, her electric utility, after its linemen cut down her mulberry tree and "topped off" her cherry tree. At trial, she stated her electricity was off when she awoke on June 30, 1993. She left to go shopping at 9 a.m. and her electricity was still off. When she returned

at 11 a.m., electrical service had been restored. However, the mulberry and cherry trees in her front yard had been cut down and one branch of her elm tree had been cut off. Segraves testified these trees had never interfered with her electrical service before. In the past, Consolidated had asked to trim the trees around her electric lines, and she had always agreed. However, Consolidated had not trimmed the trees in about six years. Segraves estimated the value of the mulberry tree at $2,000 and the value of the cherry tree at $500.

Mitchell Dale Hurt, a senior linemen with Consolidated, testified he was called to handle an electrical outage on June 30. He tracked the outage to a problem with one of the lines near Segraves' home, but he could not pinpoint the problem. He had to drive down the road and look at the individual lines to try to find the problem. When he passed the line leading up to Segraves' home, he could not see the transformer pole. He stopped and went to inspect Segraves' service. He noticed her mulberry tree was very close to the transformer. He cut down the mulberry tree "to get it away from the transformer pole." He also cut off the entire top of a nearby cherry tree because its branches had all grown towards the line. He felt these branches presented a safety hazard because children could easily climb them and reach the power lines. However, Hurt admitted it may not have been necessary to cut down either of these trees to reinstate electrical service.

Robert Pogue Jr., Hurt's supervisor, testified he told Hurt to trim as much of the trees as he thought was necessary. Robert Jahn, Consolidated's general manager, testified the electric lines on Segraves' property were placed there at the request of the previous owners, and the lines were open and obvious when Segraves purchased the property. On December 15, 1993, the trial judge entered an order finding in Segraves' favor. Consolidated now appeals.

■ In Point I, Consolidated alleges the trial court erred in finding it did not have an easement over Segraves' land "for the purpose of locating and maintaining its electrical wires." Consolidated also argues it had a right to cut down Segraves' trees because they were located on its easement.

■ In a letter to the parties which accompanied its order, the trial court stated:

The Court bases the award of damages on the facts surrounding the cutting of the trees without prior permission or request; the Court does not award damages for trespass, as the Court does find that Defendant had the right to enter onto Plaintiff's premises to maintain the electric lines. The right to remove limbs that have fallen onto the lines does not extend to cutting down trees or 'topping' trees that are not presently interfering with electrical service without prior consultation with the property owner.... The Mulberry and the Cherry trees probably needed to be trimmed; but there is no evidence convincing to the Court that the Mulberry needed to be cut to a stump and that the Cherry needed to be cut back to its major trunks, eliminating all of the fruit-bearing branches.

Although neither party requested the trial court to make these findings of fact, the trial judge's voluntary findings in his letter to the parties are a proper basis for assigning error and will be reviewed. *See, Graves v. Stewart,* 642 S.W.2d 649, 651 [3] (Mo. banc 1982).

■ The trial court found Consolidated had no right to cut down Segraves' trees. However, this does not mean it had no right to go on her land to maintain its electrical wires. Section 537.340, RSMo 1986, the statute allowing for treble damages for the destruction of trees, does not require that a party wrongfully enter upon the realty. In fact, Segraves can recover for wrongfully cut down trees if she can establish either: (1) Consolidated wrongfully entered her land and cut down the trees, or (2) Consolidated entered her land with consent but exceeded the scope of the consent by cutting down the trees without permission. *McNamee v. Garner,* 624 S.W.2d 867, 868[3] (Mo.App.1981).

■ However, Consolidated argues it had an easement by estoppel which allowed it to remove any trees in the path of its electrical wires without permission. Consolidated re-

lies upon the test set out in *Sanford v. Kern,* where the Missouri Supreme Court stated a license may be converted into an easement by estoppel if the licenseholder can establish it spent a great deal of time and money to secure enjoyment of its use. 223 Mo. 616, 122 S.W. 1051, 1056 (1909); *See also, Hermann v. Lynnbrook Land Co.,* 806 S.W.2d 128, 130[3] (Mo.App.1991); *Rahm v. Missouri Public Service Co.,* 676 S.W.2d 906, 908[4] (Mo.App.1984); *Allee v. Kirk,* 602 S.W.2d 922, 925[3] (Mo.App.1980). Consolidated argues, even if it were only granted a license to enter Segraves' property by the previous owners, this license was converted to an easement by estoppel under the *Sanford* test because it spent time and money putting up the electrical lines. In its brief, Consolidated alleges it acquired an easement which gave it "the right to enter upon the land as necessary to maintain its wires as transmitters of electrical power." However, even if the original license granted to Consolidated were converted to an easement by estoppel due to the time and money it spent to erect the electric lines, the scope of this easement would be determined by the meaning and intent that the parties gave to it. *See, Keener v. Black River Electric Co-operative,* 469 S.W.2d 657, 659[2] (Mo.App.1971). There is no history between the parties of cutting down trees, and there is nothing from which such a right can be implied. We find, even if Consolidated did acquire an easement by estoppel, it exceeded the scope of the easement by cutting down Segraves' mulberry and cherry trees. Point denied.

▉ In Point II, Consolidated alleges the trial court erred in entering judgment in favor of Segraves because it was required by law to trim and/or remove the trees to ensure safety. In response, Segraves alleges this defense was neither pleaded nor raised at trial; therefore, it cannot be presented for the first time on appeal. Review on appeal is limited to theories heard by the trial judge. *Lazzari v. Director of Revenue,* 816 S.W.2d 21, 23[4] (Mo.App.1991). However, this theory was raised at trial. Byron Jahn, Consolidated's general manager, testified about Missouri's minimum requirements for trimming and regrowth. We find this sufficient to raise the issue of whether Consolidated was required by law to trim or remove Segraves' trees.

▉ On appeal, Consolidated relies on § 394.080, RSMo Supp.1993, which states in part:

A cooperative shall have power:

(4) To generate ... and transmit electric energy, and to distribute, sell, supply, and dispose of electric energy in rural areas to its members, ...

(7) To construct, purchase, take, receive, lease as lessee, or otherwise acquire, and to own, hold, use, equip, maintain, and operate ... electric transmission and distribution lines or systems, ...

(8) To purchase or otherwise acquire, and to own, hold, use and exercise easements.

Section 394.160, RSMo 1986, requires the cooperatives to construct and maintain their electric transmission and distribution lines in accordance with the rules and regulations prescribed by the Public Service Commission. In 4 CSR 240–18.010, the Public Service Commission adopts the 1993 edition of the *National Electrical Safety Code* as the safety standard for rural electric cooperatives. Consolidated relies on the following provision of the Code:

**218. Tree Trimming**

A. General

1. Trees that may interfere with *ungrounded supply conductors* should be trimmed *or* removed.

NOTE: Normal tree growth, the combined movement of trees and conductors under adverse weather conditions, voltage, and sagging of conductors at elevated temperatures are among the factors to be considered in determining the extent of trimming required.

2. Where trimming or removal is not practical, the conductor should be separated from the tree with suitable materials or devices to avoid conductor damage by abrasion and grounding of the circuit through the tree. (Emphasis added.)

Consolidated argues it had authority to remove Segraves' trees according to § 218 because there was substantial evidence showing: limbs of both trees had been burned by

electricity, the mulberry tree was blocking the transformer pole, and the children living nearby could have easily climbed either tree and reached the live electric wires.

We disagree. First, Consolidated failed to show that § 218 even applies to this case because it failed to present evidence that the electrical wires leading to Segraves' home were "ungrounded supply conductors." Further, even if § 218 were applicable, it gives electric companies two options, trim or remove the trees. The trial court properly found it was unnecessary to remove the trees in this case.

Consolidated also argues it was obligated to remove the trees because it had a non-delegable duty to maintain a safe clearance around its electrical lines. Although Consolidated cites to several cases which require electric companies to use the highest degree of care, none of these cases impose a duty on electrical companies to remove trees close to their power lines. *See, Gladden v. Missouri Public Service Company*, 277 S.W.2d 510 at 515[2] (Mo.1955) (Missouri Supreme Court held the exercise of the highest degree of care required an electric company to *trim* tree branches close to its wires to isolate them and lessen the opportunity of persons to come in contact with them); *Gnau v. Union Electric Company*, 672 S.W.2d 142, 146[4] (Mo.App.1984) (exercise of the highest degree of care requires electric companies to anticipate that people may climb trees and to take precautions to prevent these people from being injured by its wires). Although Consolidated was required to exercise the highest degree of care in maintaining its electrical wires, it was not required to remove the trees surrounding them, and it exceeded its authority by doing so. Point denied.

■ In Point III, Consolidated alleges the trial court erred in granting Segraves treble damages because § 537.340, the statute which authorizes treble damages, only applies to damages arising out of a trespass. We disagree.

Section 537.340 states in part:

**Trespass on realty—treble damages recoverable, when**

If any person shall cut down, injure or destroy or carry away any tree placed or growing for use, shade or ornament, or any timber, rails or wood standing, being or growing on the land of any other person ... the person so offending shall pay to the party injured treble the value of the things so injured, broken, destroyed or carried away, with costs.

■ According to *McNamee v. Garner*, this section does not require that the offending party enter the land wrongfully. 624 S.W.2d at 868[3]. *McNamee* states:

A person can only fell trees wrongfully in one of two ways—he can enter the land wrongfully and fell the trees or he can enter with the landowner's consent and then exceed the scope of that consent by felling trees without permission.

*Id.* The trial court was justified in awarding treble damages after it found Consolidated exceeded its authority by cutting down the trees without Segraves' permission. Further, § 537.360, RSMo 1986, which limits the damages recoverable to single damages in certain cases, is inapplicable. According to this section, the landowner may only recover single damages "if it shall appear the defendant had probable cause to believe that the land on which the trespass is alleged to have been committed, or that the thing so taken, carried away, injured or destroyed, was his own." Consolidated's lineman had "probable cause" under the meaning of this section if he had such cause as would induce a reasonable prudent person to believe he had the right to remove trees from another person's land. *Slater v. Missouri Edison Co.*, 245 S.W.2d 457, 458[1] (Mo.App.1952). Consolidated bears the burden of proving it had probable cause, and the ultimate decision as to whether treble or single damages should be awarded rests with the trial judge. *Id.* at 458–59. The trial judge did not abuse his discretion in finding Consolidated did not have probable cause to believe it had the right to cut down Segraves' trees. Point denied.

Judgment affirmed.

CRANDALL, P.J., and WHITE, J., concur.