**Robert A. RIDGWAY and Bonita M. Ridgway, his wife, Plaintiffs–Appellants,**

v.

**TTnT DEVELOPMENT CORP., Jerry Tuma, William L. Tillman, and Jeffrey J. Tillman, Defendants–Respondents.**

No. 23136.

Missouri Court of Appeals,
Southern District,
Division Two.

July 26, 2000.

Petition for Rehearing and Transfer
Denied Aug. 17, 2000.

Application for Transfer Denied
Oct. 3, 2000.

Michael J. McKitrick, Todd L. Beekley, Danna McKitrick, P.C., St. Louis, for Appellants.

David L. Baylard, Christopher W. Jensen, Baylard, Billington & Dempsey, P.C., Union, for Respondents.

JAMES K. PREWITT, Judge.

In their three-count petition, Plaintiffs sought ejectment, injunction, and damages due to Defendants' construction of a road

over Plaintiffs' property outside of a granted easement. The trial court denied Plaintiffs' request for ejectment and an injunction and granted Plaintiffs "nominal damages in the amount of $1.00 (one dollar)." Plaintiffs appeal, presenting four points relied on, contending that the trial court erroneously declared and applied the law and that its determination of damages was against the weight of the evidence.

■ Review of this non-jury matter is set forth in Rule 84.13(d). In such a review, this Court views the evidence and permissible inferences drawn therefrom in the light most favorable to the judgment and affirms the judgment unless it is against the weight of the evidence, there is insufficient evidence to support it, or it erroneously declares or applies the law. *Hoelscher v. Simmerock,* 921 S.W.2d 676, 677 (Mo.App.1996).

Plaintiffs, residents of St. Louis County, are record owners of real property situated in Camden County on Lake of the Ozarks. They acquired title to the property on March 8, 1993. Defendants acquired title to property adjacent to that of Plaintiffs on March 15, 1993 and on June 17, 1993, and thereafter proceeded with construction of a commercial development known as The Ledges on the Beach Condominiums.

Plaintiffs' property was subject to a 40-feet-wide roadway easement that ran from Dude Ranch Road, a public roadway, through Plaintiffs' property to the property acquired by Defendants. A roadway deed dated August 6, 1992, established the easement. At the time of Defendants' acquisition of the property, a gravel roadway some twenty-five to thirty feet in width following the roadway easement served Defendants' property.[1]

In June of 1993, Defendants began construction on a new roadway bed along the same course as the old gravel roadway. No notice was given to Plaintiffs. The new roadway exceeded the 40-foot-wide easement in several locations, measuring approximately fifty to sixty-five feet in width from treeline to treeline. The roadway bed was raised several feet from its original elevation, resulting in a steep embankment on the downhill side. Many trees were removed in the process of the road's construction.

Upon learning of the construction of the new roadway, Plaintiffs notified Defendants, by letter dated July 22, 1993, that the roadway being constructed encroached on their property and demanded removal of all road improvements outside of the easement. Defendants thereafter completed construction of the road and paved it. At the time of the encroachment, the Ledges Condominium development had not been constructed.

On October 28, 1993, Plaintiffs filed a three-count petition seeking ejectment, injunctive relief for trespass and punitive and treble damages, pursuant to § 537.340, RSMo 1986. Their petition alleged that expansion beyond the 40-foot-wide roadway easement limited Plaintiffs' access to their property, and that the altered terrain and removal of hundreds of trees caused, and will continue to cause, erosion to Plaintiffs' property.

Defendants counterclaimed, requesting actual and punitive damages for Plaintiffs' interference with and obstruction of Defendants' use of the right of way, alleging interference with their easement and wrongful inducement of breach of contract.

Trial was held July 10 and 11, 1997, following which the court took the matter under submission for findings and conclusions. On June 12, 1998, the court entered its findings, order and "judgment," denying Plaintiffs' request for injunction and denying Plaintiffs' request for treble damages. Defendants' counterclaim was denied, and the court ordered further pro-

---

1. At the time Plaintiffs purchased their property, there was a small, one-building condo- minium development known as the Beacon Bay on Defendants' property.

ceedings for determination of damages to Plaintiffs.

A hearing on damages was held June 29, 1999, and final judgment was entered July 6, 1999, ordering Defendants to pay to Plaintiffs nominal damages in the amount of one dollar. The trial court found that 0.7235 acres of Plaintiffs' property was taken outside the easement as a result of Defendants' trespass, and assigned the value of the acreage taken at $7,570.08. But, the court concluded, Plaintiffs' property value had increased by twenty percent as a result of the new roadway, and was "worth more after the taking."

Lonny D. Allen, a registered land surveyor, testified on behalf of Plaintiffs. Regarding a survey he conducted of the newly-constructed road, Mr. Allen opined that it encroached upon Plaintiffs' property at four different locations across the roadway easement, totaling 31,515 square feet, or 0.7235 acres. In recross examination, Mr. Allen was asked if there is "anyplace . . . that the paved portion of the roadway . . . actually lies outside the 40–foot easement itself," to which Mr. Allen responded: "There's two."

Thomas H. Saunders, architect and landscape architect, testified that in August of 1994, he inspected the area surrounding the roadway at Plaintiffs' request. Mr. Saunders stated that as the trees removed from the area were bulldozed over and no stumps remained, it was difficult to determine how many and of what size and species were removed. Based on guidelines developed by the National Association of Arborists, his approach was to analyze the adjacent forest, plot a 2,500 square-foot area, and record the caliper and type of trees existing in that plot. He testified that the number of trees removed "could vary from 100 to 500 trees," each averaging approximately four inches in caliper. The method used by him was to first determine the species of the trees removed, then to determine the condition of the trees. Location of the trees lost was another consideration, as a tree in one's front yard may be of greater value than one growing in a field. These factors multiplied with the basic replacement cost and then multiplied with the area affected determine the value of the lost timber, which Saunders determined to be $265,862.47.[2]

To remedy the erosion and fill problems Plaintiffs contend resulted from Defendants' encroachment, Saunders proposed retaining walls along the sides of the pavement, stone gutters and headwalls at the culverts, riprock at the discharge end, topsoil and additional landscape plantings, for an additional cost of $579,800.00. Saunders' alternative plan to remedy the encroachment at the roadway site did not require stone retaining walls, resulting in a lower cost of $359,320.00, and involved reducing the pavement to a width of sixteen feet which would allow moving the cut and fill to within the 40–foot right-of-way. Further, Saunders testified that the "embankment is so steep and so high" that it makes the road inaccessible except in a few spots.

After a review of Lonnie Allen's proposed entrance plans, Saunders estimated the cost of providing five entrances from the new roadway (four on the downhill side of the road, and one on the uphill side) to be $51,440 for the four on the downhill side and $1,730 for that on the uphill side.[3]

Saunders provided another estimate for what the cost would have been at the original grade: $2,200 for the downhill entrances, and $1,000 for the uphill entrance. The retaining walls required for the downhill entrances (constituting $36,800 of the cost) and the large amount of fill necessary for the new road construction were reasons given for the difference in the costs.

2. Defendants objected to Saunders' method of valuation, but that is not a present issue.

3. For each entrance, 144 cu. yds. of fill ($1,440); 111 sq. yds. of pavement ($220); 230 sq. ft. of retaining wall ($9,200).

He also testified that these five access points off the new road were significantly smaller in number compared to the access points that existed before the new road was built because the new roadway is raised at many points.

Whether his estimate should also include a cost of $8,800 for pavement (since the original road was gravel) was questioned by Defendants.

Plaintiff Robert Ridgway testified that the original road "was a narrow, single-lane, gravel road that followed the contour of the land ... bordered closely by trees on both sides in most places," and it ran from Dude Ranch Road to the Beacon Bay property. The road divided the Ridgways' property. At the time they purchased the property, there may have been one or two condominiums occupied. The construction of the new road resulted in the roadway being raised and "a lot of fill" added. This created "very steep embankments on the downhill side." Ridgway testified that because the old road followed the contour of the land, they had "fairly good" access to various points across their property. Ridgways purchased approximately 17 acres for a price of $184,000.00, approximately $10,800 per acre, but he gave no opinion as to the value of his property with and without the roadway, yet he opined that there was no benefit to his property from the newly paved road.

Teddy Jack Blaylock, an MAI registered appraiser testifying for Defendants, stated that he used a market data approach in estimating a value on the Ridgway property. He based his opinion on comparable sales of wooded, "raw acreage" facing paved roads as opposed to facing gravel roads or chip-and-sealed roads, in roughly the same time period, and with similar proximity to the water. He valued the Ridgways' property prior to construction at $203,000.00, and $233,000.00 after the road construction. He also considered a cost approach, to which he assigned a value of $265,000.00 after the new road was constructed. Blaylock determined that the cost of the roadway was $62,360.00.

Blaylock testified he had personal knowledge of the road, had traversed it and appraised it both before and after the new road construction. He said that there was "[v]ery little change in the tree line," and contour of the roadway. He testified that in his valuation, he took into consideration the aesthetic value of trees, the width of the roadway, compliance with city standards, and the highest and best use of the property as prospective subdivision land. When questioned regarding acceptable appraisal methods, Blaylock testified, "[I]n Missouri we operate under what's known as a federal rule. You do a before and after scenario. You do not value the part taken.... An easement you would only acquire roughly 50 percent of the total property rights, so you're talking about maybe 3,800, 3,900 dollars as the value of the part taken within the ... encroachment."

Jeff Tillman, a stockholder in TTnT Development Corp., testified that there were only two areas where the road encroached upon Plaintiffs' land, and both locations were at curves in the road. From reading the transcript, there appears to be a conflict involving which party was responsible for excessive clearing outside the easement near the entrance of the road, one of the locations Plaintiffs allege Defendants exceeded the easement. Tillman testified that his company did not do any clearing in the location of the entrance and that he had assumed that a neighboring landowner, Bob Rooney, was responsible for the removal. He claims his company made no alterations for approximately the first 100 feet of the road.

Tillman pointed out four areas which were marked as encroaching upon Plaintiffs' property which he contended were not made by his company. He assumed it was done at the direction or request of Rooney and/or Steve Lieber, both of whom wanted to participate in financing the construction of the road provided it was taken

as a city road when completed. Tillman conceded that at one point the pavement encroached upon Plaintiffs' land approximately five feet outside the easement.

Bill Johnson, the general contractor for TTnT Development Corp., hired Helton Construction to construct the road, and testified that he was instructed to build a 40–foot roadway "following the existing center line of the road and not to exceed 20 feet on either side of that centerline." He requested inspection of the road by city officials to ascertain that the road met city standards, which it did. He testified that the pavement width is 20 feet, with 2 feet of compacted base on each side, for a 24–foot roadbed. He also testified that lumber trucks, concrete trucks and dump trucks had traversed the original roadway prior to the improvements. When asked to compare the new roadway to the original roadway, Johnson responded:

> The basic roadway is pretty similar to what it is now, ... other than we filled in some low spots where there were some drainage problems and evened out the – the surface of the roadway itself. As far as the downslopes and the back slopes, they're not too dissimilar from what they were when we started.

Johnson stated that he did not believe that the disturbance alleged by Plaintiffs in the area of encroachment could be attributed entirely to the new construction. He said he did not observe much of a change in the areas. He further stated that he did not believe many, if any, trees were removed outside the area in the easement.

David Nunn, a real estate appraiser, testified on behalf of Plaintiffs that he appraised the Ridgways' property before and after the road improvements. He estimated that as of June, 1993, the fair market value of the Ridgway property was $184,000, and the fair market value after the road construction was $126,000. He

testified that, as the improved roadway served other landowners, it was more of a general benefit rather than a special benefit. He valued the 0.7235 acre taken at $8,000.

The trial court issued its Findings and Conclusions in its Final Judgment filed July 6, 1999. Therein, the court found that: (1) Defendants were guilty of trespass; (2) 0.7235 acre of Plaintiffs was "taken", the value of which would be $7,570.08; (3) the value of Plaintiffs' land prior to the taking was at least $184,000; (4) the road improvements increased the value of Plaintiffs' property by twenty percent, and the property was worth more after the taking; (5) Plaintiffs would have incurred additional costs for access entrances if the road had been within the easement; (6) as the property was undeveloped and in its natural state and Plaintiffs had done nothing to improve the property, costs for new plantings, topsoil restoration, maintenance, retaining walls and culverts were desirable, but not necessary. After the hearing on damages, the trial court ultimately awarded Plaintiffs $1.00 in nominal damages.[4]

It is true, as the trial court noted in denying the injunction sought, that whether to order encroachments to be removed by a mandatory injunction is discretionary considering the circumstances of each case, the convenience of the parties, the willfulness of the encroaching party and the conduct of the party whose land has been encroached upon. *See Heinrich v. Hinson,* 600 S.W.2d 636, 641 (Mo.App. 1980). However, here it appears that Defendants either intentionally or very carelessly exceeded the boundaries of the easement. The trial court stated that the 40–foot easement was very specific as to location and that Defendants constructed the roadway outside of that location. The court found that Defendants instructed the contractor to stay within the easement but

---

**4.** The trial court found that damages should be determined as in a condemnation case. *See State ex rel. Missouri Highway Comm'n v.* *Edelen,* 872 S.W.2d 551, 554 (Mo.App.1994) ("special benefit" may set off landowner's damages).

the contractor did not. It is difficult to assume that Defendants did not learn of the encroachments when they could have been eliminated with minimal expense and damage. Of course, if the contractor did not follow Defendants' instructions, Defendants may have a remedy against him.

The trial court also found that "Plaintiffs advised Defendants of the encroachment and asked the removal of all improvements. Defendant paved the road after this." The trial court concluded that "[o]nce the Plaintiffs contacted Defendants the Defendants clearly had notice the road was at points outside the easement. However, they went ahead and paved the road knowing that the road was encroaching on Plaintiffs. This was wrong." The trial court further found:

> Theoretically Plaintiffs have established the elements of ejectment in Count I and trespass in Count II. Plaintiffs clearly had the right to possession of the real estate described in Lonny Allen's exhibit (the surveyor). However, the Court finds that the safety and health of the 147 owners in the 180 condominium units requires the road to remain and for the Court to deny relief requested to eject Defendants and to deny request for injunctive relief. Further we are only dealing with a total of .7235 acres at several different points along the road.

■ The health and safety of the condominium owners can be protected without allowing Defendants to appropriate property of Plaintiffs. Under the circumstances here, we conclude that the trial court abused its discretion in not entering a mandatory injunction ordering the re-

moval of the roadway and related improvements outside of the easement. It is not necessary for the trial court to order removal to occur immediately but to allow a reasonable time for this to be done, and if necessary, time for improvements within the easement in order that a road is available for those needing to access the condominiums or Defendants' property. The trial court also erred in its assessment of damages, as this is not a condemnation case, but trespass.

We are unable to find any misconduct by Plaintiffs, yet it is clear that Defendants or their contractor either willfully or carelessly encroached upon the Plaintiffs' land. We do not believe courts should condone such conduct, thus allowing private parties to have, in effect, the right of eminent domain. Taking of private property for private use is a violation of Article I, Section 28 of the Missouri Constitution. *See Heinrich*, 600 S.W.2d at 641–42.[5]

In *Smith v. Woodard,* 15 S.W.3d 768 (Mo.App.2000), we recently determined that a party may not build a roadway outside of their clearly-defined easement. We believe that is the correct result here. Supporting this belief are the analyses in *Heinrich, supra,* and *Banyan Constr. Co., Inc. v. Union Electric Co.,* 840 S.W.2d 298 (Mo.App.1992).

As to damages, numerous cases indicate the proper measure. In *Smith,* 15 S.W.3d at 773, we said:

> The measure of damages to real property, where the property can be restored to its former condition, is the difference in its fair market value before and after

5. Mo. Const. Art. I, § 28 states:

> **Section 28. Limitation on taking of private property for private use – exception – public use a judicial question.** That private property shall not be taken for private use with or
> without compensation, unless by consent of the owner, except for private ways of necessity,

and except for drains and ditches across the lands of others for agricultural and sanitary purposes,
in the manner prescribed by law; and that when an attempt is made to take private property for a
use alleged to be public, the question whether the contemplated use be public shall be judicially
determined without regard to any legislative declaration that the use is public.

the injury, or the cost of restoring it, whichever is less. [Citation omitted] In cases alleging trespass, it is not necessary that damage result because trespass entitles the wronged party to nominal damages. [Citation omitted] The general rule is that the measure of damages for tortious injury to real property is the difference in the fair market value of the property before and after the injury or the cost of restoring the property, whichever is the lesser amount. [Citations omitted] This rule for measure of damages is similar to that for trespass, except with trespass no actual damage must be proven; the claimant is entitled to at least nominal damages.

■ *Breiding v. Wells*, 800 S.W.2d 789, 791–92 (Mo.App.1990), provides the following for determining damages in a trespass action:

Ordinarily, the measure of damages in a § 537.340 action is the market value of the property at the time it was removed from the land. [citations omitted] However, in at least one instance, this court [So.Dist.] approved the use of before and after values of the real estate as a measure of damages in a § 537.340 action where the things taken, injured, or destroyed by a willful trespass have no substantial market value, when considered in their severed state. *Barnes v. Arkansas–Missouri Power Co.*, 220 Mo. App. 141, 149–50, 281 S.W. 93, 96 (1926). The reasoning in *Barnes* for using before and after values of the land as a § 537.340 measure of damages, in certain limited instances, is sound.

*Brand v. Mathis & Associates*, 15 S.W.3d 403, 407 (Mo.App.2000), offers guidance in the determination of damages:

If upon retrial, it is determined by the trial court, based upon substantial evidence, that the trees and/or saplings that were cut or destroyed had no substantial market value in their severed state, evidence of before and after land

values should be received and considered by the trial court in determin- ing the damages for the trespass. [citation omitted] If, however, the trial court determines that the trees cut or destroyed had a substantial market value, then the evidence of the fair market value of the trees so cut or destroyed should be received and weighed to determine the measure of plaintiffs' damages. [citation omitted]

■ Entering land with consent or license and exceeding the scope of that consent or license constitute a trespass. *Smith*, 15 S.W.3d at 773. If the user of an easement exceeds his right, either in manner or extent of use, he is guilty of trespass and if proven, would allow for a legal remedy of damages. *Id.*

■ The damages to Plaintiffs' land outside the easement were not authorized whether they were caused by the contractor directly altering the land or as a result of erosion or other factors due to the alteration of the roadbed within the easement. Plaintiffs' damages should not be determined in accordance with the taking of land by eminent domain, as Defendants should not be allowed to take any of Plaintiffs' land. The damages occurred on land that Defendants had no right to appropriate or use. Whether Plaintiffs were benefited by a better road is not relevant to a determination of damages to property to which Defendants had no legal right to alter or use.[6]

In determining damages upon remand the court must decide whether or not to assess treble damages, pursuant to § 537.340, RSMo 1986. For the trial court's consideration, we offer the following guidance.

■ Section 537.340, is a penal statute and must be strictly construed. *Fondren v. Redwine*, 905 S.W.2d 156, 157 (Mo. App.1995). A cause of action brought un-

---

6. Due to the trial court's function of judging credibility and the wide divergence of testi-

mony relating to damages, this Court is not in a position to assess Plaintiffs' damages.

der this penal statute differs from a cause of action brought under common law trespass. *Porter v. Fitch,* 727 S.W.2d 161, 164 (Mo.App.1987). Statutory trespass attempts to redress plaintiff for injuries that often have intangible qualities, such as aesthetic value, and such damages are often difficult to measure. *Id.*

 Section 537.340 is tempered by § 537.360, which states that if defendant had probable cause to believe land was his own, plaintiff shall receive only single damages, with costs. *Brown v. Wilkinson,* 495 S.W.2d 678, 681 (Mo.App.1973). One would have "probable cause" under the meaning of this section if there is such cause as would induce a reasonable person to believe he had the right to remove trees from another's land. *Segraves v. Consolidated Electric Cooperative,* 891 S.W.2d 168, 172 (Mo.App.1995). Defendant bears the burden of proving probable cause. *Id.* The ultimate decision as to whether treble or single damages should be awarded rests with the trial judge. *Id.*

Section 537.340, RSMo, "imposes liability for the wrongful cutting down of trees." *McNamee v. Garner,* 624 S.W.2d 867, 868 (Mo.App.1981). The statute states, in part:

> If any person shall cut down, injure, or destroy or carry away any tree placed or growing for use, shade or ornament, or any timber, rails or wood standing, being or growing on the land of any other person ... the person so offending shall pay to the party injured treble the value of the things so injured, broken or destroyed or carried away, with costs.

This section does not require that the offending party enter the land wrongfully. *Anderson v. Howald,* 897 S.W.2d 176, 180 (Mo.App.1995). One can violate the statute in one of two ways. One can enter the land wrongfully and fell the trees, or one can enter with the landowner's consent and then exceed the scope of that consent by felling trees without permission. *Id.*

The judgment is reversed and the cause remanded for the trial court to enter a mandatory injunction ordering the removal of the roadway and other alterations outside of the easement, allowing a reasonable time for this to be accomplished and, if necessary, a reasonable time for improvements within the easement in order that there be continued access for those wishing to go to and from the condominiums and Defendants' property. The trial court must also determine, consistent with this opinion, and take additional testimony if necessary, Plaintiffs' damages as a result of Defendants' encroachments on Plaintiffs' property.

BARNEY, C.J., and GARRISON, J., concur.