**Thomas R. EDMUNDS and Rhonda Edmunds, Respondents,**

v.

**SIGMA CHAPTER OF ALPHA KAPPA LAMBDA FRATERNITY, INC., Appellant.**

No. WD 60510.

Missouri Court of Appeals, Western District.

Submitted July 24, 2002.

Oct. 22, 2002.

Douglas Dean Silvius, Kansas City, MO, for Appellant.

Bruce A. Bailey, Warrensburg, MO, for Respondent.

Before HAROLD L. LOWENSTEIN, P.J., JAMES M. SMART, JR., and THOMAS H. NEWTON, JJ.

JAMES M. SMART, JR., Judge.

This is an appeal of a judgment finding that the use of the appellant's rural land for fraternity social events constituted a nuisance and imposing injunctive relief concerning the use of the property. Because we determine that the trial court had jurisdiction to proceed with adjudicating the matter and that the trial court did not err in the remedy imposed, we affirm the judgment.

The evidence is considered in a light favorable to the decision of the trial court. Sigma Chapter is the local chapter at Central Missouri State University of the Alpha Kappa Lambda national fraternity. The local chapter is an unincorporated association of students. Sigma Chapter of Alpha Kappa Lambda, Inc., is a Missouri not-for-profit corporation formed for the sole purpose of owning property and making it available for student use. The corporation bought the land in this case on April 15, 1976. The land is rural land located on State Route BB outside the city limits of Warrensburg. Although the record is not explicit, it appears from the exhibits that the land consists of a relatively small amount of acreage. We gather from the record that the land has approximately 200 or 250 feet of highway frontage and extends approximately 1,200 feet deep in a rectangular configuration. The land is undeveloped except for a shelter house or pavilion. The corporation bought the land for the use of the local chapter of Alpha Kappa Lambda at Central Missouri State University. The corporation makes the land available to the local chapter on the conditions that: 1) no firearms are to be used or discharged at the property; 2) the local chapter is to maintain the property; and 3) the local chapter is to pay for any utilities (the shelter house has electrical service). There is no lease or other conveyance of any interest in the land to the unincorporated local chapter. The local chapter uses the land simply by permissive license.

In 1995, Plaintiff Rhonda Edmunds (then Rhonda Belshe) began residing on adjacent property. Her husband, Plaintiff Thomas Edmunds, has resided there with her since their marriage in 1998. Their house is approximately sixty-five feet from the property line of the corporation's property. The record does not indicate the distance of the Edmunds' house from the shelter house on the corporation's property.

The Edmunds became unhappy with fraternity social events occurring on the property. Sometimes the events included large, unruly crowds of students who were bussed to the property from the campus. The Edmunds determined from courthouse records who owned the property. They contacted the corporation by correspondence concerning the nature of their complaints. Receiving no satisfaction, the Edmunds brought an action against the corporation in July 1999, alleging nuisance and seeking an injunction restricting the use of the property. As part of its response, the corporation filed a motion to dismiss the petition on the grounds that the plaintiffs failed to join a necessary party. The corporation argued that the

suit should be dismissed because neither the individuals comprising the local chapter nor the officers of the local chapter were joined as party defendants. The trial court denied the motion.

At trial, Rhonda Edmunds testified about the effect of the student parties on the Edmunds' use and enjoyment of their property. She testified concerning numerous occasions that social events on the adjacent property interfered with her ability to sleep and to enjoy the peaceful utilization of her property. She also testified concerning particular events that were especially noisy. She stated, for example, that on one occasion in November 1997, bus loads of people began arriving in late afternoon and the buses ran continuously every fifteen to twenty minutes until about 3:00 a.m. or 4:00 a.m. Her testimony was that throughout most of that time there were approximately six to seven hundred individuals present. She testified she was unable to sleep because of the noise. She testified that two college-aged young men came onto her property and tried to remove a steel fence post. She testified that later in the evening, more than a hundred young people were in her front yard screaming.

She testified that once a week or so, and sometimes multiple times during the week, one or more vehicles would drive onto the fraternity property, with the "music blaring" and "tires spinning," in the early hours of the morning, which would awaken her. Respondent testified that after these problems began, she began keeping a log of activities related to events taking place on the fraternity's property. Her log was introduced in evidence to demonstrate the activities she had noticed on the property. The log commenced on January 31, 1998, and continued to July 6, 2001. The log consisted of many detailed entries, describing various activities on the property, by

date and time, some of which included events during daytime hours and described relatively inconsequential activity. Others set forth activities going into the early morning hours with loud music (apparently with stereo speakers mounted in trees), large crowds, yelling, chanting, and other distracting activity. Mrs. Edmunds testified that occasionally the noise level was so loud that it vibrated glassware within her home. On one occasion, she was running the vacuum cleaner in her home and could still hear the music over the vacuum. She testified that she and her husband were kept awake on numerous occasions until the early morning hours, sometimes as late as 3:00 a.m. or 4:00 a.m.

Mrs. Edmunds also testified that after these gatherings, her property would occasionally be littered with trash. She introduced exhibits showing the condition of her property and the neighboring fraternity property. She also testified concerning gunshots heard coming from the property on one occasion, and described cardboard box targets that had been placed on the fence line between the parties' property. She presented evidence that these cardboard box targets had been fired upon, by introducing photographs of the targets and also introducing one target itself, which clearly showed evidence of bullet holes.

Deputy Sheriff Edwards testified that in the seven and one-half years that he had been with the sheriff's department, he had been dispatched to the fraternity property twenty to thirty times. He testified that eighty percent of the times he went to the property were after 1:00 a.m. One-third of the time he was called back to the same location on the same evening. Deputy Edwards stated that at an event called "mulestock" there were six hundred to seven hundred students being bused in and out of the fraternity property. He testified that when he arrived, he saw between one

hundred and one hundred-fifty young people out on State Route BB. He called for additional police units for backup. He stated that his patrol car was pelted with "pieces of brick." He stated that on other occasions when he was dispatched to the property, the size of the groups ranged from thirty to three hundred persons. He testified that often the party would die down after his visit, but on some occasions he had to go to the property more than once on the same night.

Deputy Martin testified that he remembered being called out five or six times to the fraternity property. He investigated complaints about gunshots and discovered a target located in a position where a stray shot could have struck the Edmunds' residence.

Plaintiffs presented the deposition testimony of former neighbors Tom and Leann Willey, who had resided on the other side of the Edmunds' property, away from the fraternity property. They testified concerning loud music coming from the property in the early morning hours and testified that they called the sheriff's department on four separate occasions.

At the request of the plaintiffs, Sergeant Haines of the Johnson County Sheriff's office brought the department's incidents reports and central dispatch logs concerning calls related to the fraternity property. These showed incidents to which officers had responded from April 1999, through April 2001.

The corporation presented the testimony of Matthew Stumm, a corporation officer residing in Lee's Summit. Mr. Stumm testified that the corporation had already instructed the local chapter not to host the parties such as "mulestock" in which other fraternities and sororities are all invited to the land for a major party of six or seven hundred people. He expressed the view that a fence and a gate to the land would not successfully preclude access by unauthorized persons due to vandalism caused by other fraternities.

After hearing the evidence at trial, the trial court found that the conduct of those using the property had appreciably interfered with the Edmunds' ordinary enjoyment of their property; that the nature of use, frequency of use, and effect upon the plaintiffs' lives and their enjoyment of their property were substantial and constituted a significant harm constituting a private nuisance temporary in nature and capable of being abated. The court further held that the defendant fraternity corporation had received notice of the nuisance in the fall of 1997 and failed to exercise reasonable care to prevent the nuisance.

For its remedy, the court directed the corporation to:

. . . give written notice to the local Alpha Kappa Lambda fraternity chapter of its obligation to comply with the terms of this judgment. IT IS FURTHER ORDERED that defendant shall abate the nuisance by:

a) Constructing and maintaining in good condition a four-barbed wire fence on or before November 1, 2001, beginning at a point on defendant's south boundary where it intersects with the right-of-way of State Route BB and running in a northerly direction along the state right-of-way to a point on defendant's north boundary where it intersects with the right-of-way of State Route BB. Defendant may install one or more gates in the fence to be constructed provided that all such gates shall be installed by inverting the top hinge pin and securing the hinge ends of the gate[s] with a chain to hinder removal of the gate[s].

b) Keeping the gate[s] shut and securely locked at all times between the hours of 11 p.m. and 8 a.m. from Sunday through Thursday throughout the year, and between the hours of 12:30 a.m. and 8:00 a.m. Friday and Saturday throughout the year.

c) Restricting the use of the property for the assembly of any group so that it does not exceed 200 individuals at any time to prevent inappropriate noise levels.

d) Restricting the use of the property for the discharge of any rifle, pistol, shotgun or similar weapons in accordance with the defendant's existing policy.

e) Establishing a local contact person and keeping the plaintiffs, or their successors in interest, informed as to an address and telephone number to use in reaching the designated contact person in the event of further disturbances or alleged violations of this judgment. Plaintiffs are directed to make every reasonable effort to inform the designated contact person of their allegations prior to calling a law enforcement agency.

IT IS FURTHER ORDERED that defendant is to use its best efforts to prohibit consumption of alcoholic beverages by underage persons on the defendant's property.

This appeal was then timely filed October 3, 2001.

The corporation contends that the trial court lacked jurisdiction to proceed without joining the local chapter of the fraternity because the local chapter was a necessary party as defined in Rule 52.04. Rule 52.04 states in pertinent part:

**52.04. Joinder of Persons Needed for Just Adjudication**

■ **(a) Persons to Be Joined if Feasible.** A person shall be joined in the action if: (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant.

**(b) Determination by Court Whenever Joinder Not Feasible.** If a person as described in Rule 52.04(a)(1) or Rule 52.04(a)(2) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it or should be dismissed, the absent party being thus regarded as indispensable. The factors to be considered by the court include: (i) to what extent a judgment rendered in the person's absence might be prejudicial to that person or those already parties; (ii) the extent to which by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (iii) whether a judgment rendered in the person's absence will be adequate; and (iv) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

**(c) Pleading Reasons for Nonjoinder.** A pleading asserting a claim for relief shall state the names, if known to

the pleader, of any persons as described in subdivisions (a)(1)-(2) hereof who are not joined, and the reasons why they are not joined.

Pursuant to Rule 52.04, a person may be considered a necessary party if (1) in the person's absence complete relief cannot be afforded or (2) the person claims an interest in the subject matter, and disposition of the matter in the person's absence may impede the protection of that interest or subject the person to multiple or inconsistent obligations. If joinder of such a necessary party is not feasible, the court shall determine whether "in equity and good conscience" the matter should be allowed to proceed. If the case cannot properly be adjudicated in equity and good conscience without the presence of that party, the court may deem the party indispensable and may find it necessary to dismiss the action. "The lack of an indispensable party is a jurisdictional failure which may be raised at any stage of the proceeding, even on appeal." *In re Estate of Pilla,* 735 S.W.2d 103, 105 (Mo.App.1987).

### Necessary v. Indispensable

 There is a subtle difference between the concept of the necessary party and an indispensable party. *Bracey v. Monsanto Co., Inc.,* 823 S.W.2d 946, 947 (Mo. banc 1992). A necessary party is a party meeting the description set forth in Rule 52.04(a). An indispensable party is a necessary party who cannot feasibly be joined at the time but whose absence is so critical that equity and good conscience will not permit the matter to proceed without that party. Rule 52.04(b). The absence of a necessary party is not fatal to jurisdiction. *Bracey,* 823 S.W.2d at 947. The remedy for failure to join a necessary party is by motion to add a necessary party rather than by a motion to dismiss. *Id.* Here, the corporation claimed the local members were necessary parties but never

moved to add the local members of the fraternity. Rather, the corporation simply moved to dismiss the action. The issue of indispensability has not been directly raised, because the contention of Appellant is that the members of the local chapter were *necessary* parties. Nevertheless, because the issue of indispensability can be raised at any time, and because we understand that the appellant really wants to argue indispensability, we will, *ex gratia,* consider on appeal whether the students were indispensable parties.

First, we must recognize that it is not clear that the local chapter or the individual students were even necessary parties. The local chapter had no ownership interest, leasehold, or tenancy, and used the property only by permissive license. The Edmunds also point out that they did not, in their action, seek to regulate the conduct of the local chapter. Rather, they sought to enjoin the *owner* of the land from allowing it to be used at certain times. Thus, they argue, complete relief could be accorded without joining another party. Indeed, it is true the corporation never denied that it had control of the property and that it could issue instructions concerning the limitations of activities on the property. Also, if the corporation's purpose was to provide the land for the benefit of the fraternity, it is not clear how the local chapter would be disadvantaged by not being a party to the action.

No doubt the members of the local fraternity were affected by the trial court ruling. No doubt other students at CMSU—those accustomed to participating in events at the property—were also affected by the ruling. However, the corporation fails to demonstrate that merely being affected by an adjudication is sufficient qualification to constitute one a necessary or indispensable party. The members of the local had no contract or

property right of their own that was affected. The only effect on the members related to the circumstances and conditions of their permissive use of the property.

It is not clear that a disposition of the case in the absence of the local members would, as a practical matter, impair or impede their ability to protect their interest in the permissive use of the land. The trial court could have concluded from the undisputed evidence as to the corporation's purpose that the members of the local were in direct privity with the fraternity corporation. The *raison d'être* for the corporation was to provide a rural facility for the social activities of the local. Accordingly, it was the purpose of the corporation to protect the social interests of the local. The resolution of the matter, therefore, in the absence of the members of the local chapter would not, as ·a practical matter, impair or impede the ability of the local chapter to protect that interest.

Also, it cannot be said that a disposition in the absence of the local chapter or the students would subject the students to a risk of inconsistent obligations. It appears unlikely that the Edmunds would bring a second action against the local chapter, an unincorporated association, or against individual members, seeking other or additional relief. Even if they did, however, and the court were to enter injunctive relief against the members, there would be only one injunction against the local members, not two. Consequently, the members would face no risk of inconsistent obligations.

The regulations imposed by the court were directed specifically to the fraternity corporation and required that it close its land at certain times and observe certain conditions. There is one minor ambiguity in that the court's order states that the corporation is directed to "give written notice to the [local chapter] of its obligation to comply with the terms of this judgment." It is not clear whether the words "its obligation" refers to the obligation of the corporation or the obligation of the local chapter. Either interpretation is possible from the text. From the context, however, only one is logical. Because only the corporation was a party before the court, the logical construction is that the corporation is to notify the local chapter that the *corporation* must comply with the court's order. The court could reasonably assume that the members of the local would not want to subject the corporation to further litigation over the use of the land. To the extent that the phrase in question means anything else, it would not, in any event, put the local members at risk of a contempt citation in view of the fact that they are not joined as parties.

Because of the privity between the local members and the corporation, because the trial court's relief runs against the corporation, and because complete relief could be and was granted in the absence of the local chapter, we conclude that, in equity and good conscience, the court need not consider the members of the local chapter to be indispensable parties.

For all of the foregoing reasons, the trial court did not lack jurisdiction to proceed.

### Unreasonable Restriction on Ownership Rights

In its second point, the appellant corporation contends that the trial court erred in its determination that the corporation had maintained a nuisance and must restrict access to the property to certain hours, limit the number of people that may assemble on the property at any time, and must establish and maintain a contact person locally to receive complaints from the Edmunds or any successors in interest as to any further violations of the judgment,

because the restrictions imposed were greater than, and more restrictive than, a proper balancing of the respective interests required. The appellant argues that the remedy proposed by the court is an unreasonable restraint on the corporation's freedom to continue to use its property, violates the right of the defendant and its beneficiaries to assemble at the property, and imposes an unreasonable restriction on the corporation's ownership rights by making maintenance of a local agent a condition of continued use of the property.

 In a case of nuisance, the trial court in designing a remedy is to achieve a proper balancing of the equities between the parties. *See Massey v. Long*, 608 S.W.2d 547, 550 (Mo.App.1980); *Racine v. Glendale Shooting Club, Inc.*, 755 S.W.2d 369, 373–74 (Mo.App.1988). In "balancing the equities," the court is to consider all the equities between the parties as disclosed by the circumstances of the case. *Newmark v. Vogelgesang*, 915 S.W.2d 337, 339 (Mo.App.1996). The issuance of injunctive relief, along with the terms and provisions thereof, rests largely within the sound discretion of the trial court. *Mid–States Paint & Chem. Co. v. Herr*, 746 S.W.2d 613, 616 (Mo.App.1988). The trial court " 'is vested with a broad discretionary power to shape and fashion the relief it grants to fit particular facts, circumstances, and equities of the case before it.' " *Id.* (quoting *May Dep't Stores Co. v. County of St. Louis*, 607 S.W.2d 857, 870 (Mo.App.1980)).

### Prior Ownership

 Appellant contends that because it was using its property for social events before the Edmunds moved nearby, the fraternity's prior ownership is a factor the trial court should have considered. Appellant cites *Clinic & Hospital, Inc. v. McConnell*, 241 Mo.App. 223, 236 S.W.2d

384 (1951). The court in *McConnell* recognized that priority of occupation is not a defense as to one maintaining a nuisance. *Id.* at 391. The court also stated, however, that prior occupation may be a factor to be considered in determining the character of the locality. *Id.* We agree with the proposition that the priority of occupation is a factor to be considered in determining the character of the locality and the reasonableness of the owner's use of the land, especially if the owner's use is reasonably apparent to the neighbor at the time the neighbor purchases the property. We see no indication in this case that the trial court failed to consider the fraternity's priority of occupation in this case. The court never ruled such factor was irrelevant. Neither party requested specific findings of fact or conclusions of law; therefore, all fact issues are to be considered found in accordance with the result reached by the trial court. *McLain v. Johnson*, 885 S.W.2d 345, 347 (Mo.App. 1994). In a judge-tried case, the reviewing court views the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment and disregards all evidence and inferences to the contrary. *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991). We conclude that there was substantial evidence supporting the judgment of the trial court that a nuisance existed on the corporation's property, that the trial court properly considered the fraternity's prior occupation of the land, and that it was not an abuse of the trial court's discretion to grant the relief that it did.

### Scope and Breadth

 The corporation next complains about the scope and breadth of the remedy fashioned by the trial judge. The corporation refers to cases involving noise-related nuisances in which the courts ap-

proved a balancing of the utility of the offending owner's use of the property against the gravity of harm to the respondents. *See McCombs v. Joplin 66 Fairgrounds, Inc.,* 925 S.W.2d 946, 951 (Mo. App.1996). The trial court judgment requires the appellant to construct a relatively inexpensive form of fencing, barbed wire, along the highway frontage. Gates are to be constructed with an inverted top hinge so as to deter the removal of the gates by vandals or trespassers wanting to go upon appellant's property without permission. The gates are to be locked from 11:00 p.m. until 8:00 a.m. Sunday through Thursday, and from 12:30 a.m. to 8:00 a.m. Friday and Saturday. The size of any group is directed to be two hundred persons or less, and the existing policy of prohibiting firearm use is to be continued.

The trial court deemed the fencing requirement to be necessary in that, otherwise, individuals (both authorized and unauthorized) could easily obtain access to the property. The Edmunds argue that, with the partying taking place outdoors, a restriction to two hundred persons is reasonable, especially in view of the size of the local chapter, which is between fifty and eighty members. The corporation argues on appeal that a restriction to two hundred persons is unreasonable, in that alumni events held in the afternoon at the property may require allowances of up to two hundred and fifty persons. While this may be a logical and reasonable assertion, we do not find that this information and argument was presented to the trial court. Thus, we will not reverse this aspect of the order. Because the trial court retains jurisdiction to modify its own injunction, the matter may be taken up with the trial court.

The court acted within its discretion in setting different weekend hours from weekday hours in its effort to balance the reasonable use of the fraternity property against the interests of the Edmunds to maintain the quiet enjoyment of their property. The trial court exercised its "broad discretionary power" in this case to "shape and fashion" the relief it deemed fit given the facts and circumstances of the case. *See Mid–States Paint & Chem. Co.,* 746 S.W.2d at 616. The appellant never states exactly what the court should have done differently with regard to the hours of access to the property, and no evidence was presented that such an arrangement would inequitably balance the interests of the Edmunds against those of the corporation.

The appellant also challenges the reasonableness of the requirement of maintaining a local contact person. The evidence before the trial court was that the corporate representative appearing at trial lived in Lee's Summit, Missouri. Other corporate officers lived in other locations outside of the Warrensburg area. Plaintiffs, therefore, reasonably desired that there be a local contact person with whom the Edmunds could discuss property use complaints. We fail to see that the designation of a local contact person was an unreasonable requirement or was outside of the court's discretionary powers. No authority was presented to support appellant's contention. Accordingly, we see no need to reverse the trial court's order as far as the scope and breadth of the order.

### Legal Cause

In point three, appellant argues that the court erred in its ruling because the corporation was not "the legal cause" of the nuisance and that the proper defendant was the local chapter and its members. This sounds somewhat like a reiteration of the "necessary party" argument. To some extent it is, but the appellant makes an additional argument also.

The corporation argues, in effect, that it had no legal responsibility for the nuisance. The corporation discusses the case of *Grommet v. St. Louis County*, 680 S.W.2d 246 (Mo.App.1984). In that case, neighbors of a school sought an injunction against a school district to direct it to barricade access between its parking lot and a public street in order to prohibit visitors from driving on the public street to gain access to the parking lot. *Id.* at 248. The court granted the injunction. *Id.* The reviewing court reversed the trial court's decision on the ground that, even though there were drug and beer parties held on the parking lot, there was no evidence that the school officials had done anything to facilitate or sanction the parties in any way. *Id.* at 253. Any use of the property by unauthorized persons was entirely separate from the school district's interest in the use of the property. Thus, the court said, the school was not the "legal cause of any injury" to the neighbors. *Id.*

This case is, of course, distinguishable from *Grommet* in that, here, the corporation certainly had sanctioned the use of the property for fraternity parties and other social events. This is not a case in which the use of the property by unauthorized third parties was incidental to the intended use of the property. Rather, here the use of the property by the students *is* the intended use of the property.

### Conclusion

For the foregoing reasons, the judgment is affirmed.

LOWENSTEIN and NEWTON, JJ., concur.