SOUTHERN STAR CENTRAL GAS
PIPELINE, INC., Appellant,

v.

David R. MURRAY a/k/a David
R. Murphy, Respondent.

No. 26930.

Missouri Court of Appeals,
Southern District,
Division Two.

March 15, 2006.

Motion for Rehearing or Transfer
Denied April 10, 2006.

Application for Transfer Denied
May 30, 2006.

 

John Nichols, Teresa J. James and Teresa L. Mah, Overland Park, for appellant.

Andrew P. Wood, Neosho, for respondent.

ROBERT S. BARNEY, Judge.

Southern Star Central Gas Pipeline, Inc. ("Appellant") appeals the trial court's judgment denying it injunctive relief against David R. Murray a/k/a David R. Murphy ("Respondent") arising from its allegations that Respondent was impairing its use of a pipeline easement by the presence of a permanent dwelling within the boundaries of its easement. Appellant alleges four points of trial court error discussed below. We affirm.

The record reveals that on July 8, 1999, Respondent purchased real property on which was located a modular home. Prior to Respondent's purchase of the property, one of Respondent's predecessors in interest granted a pipeline easement to one of Appellant's predecessors in interest on September 28, 1967. The easement document was devoid of any language from which the easement size or location could be determined, i.e., it simply provided an easement somewhere "over and through the following real estate in Newton County, State of Missouri, to-wit: E/2 SW/4 SW/4 Sec 13–T24N–R33W except the West 208 feet of the North 416 feet thereof." The easement further provides, in part, that

> a Right–of–Way to construct, reconstruct, renew, operate, maintain, inspect, alter, replace, repair and remove a pipe line, and (subject to the payments hereinafter provided) additional pipe lines for the transportation of gas, oil, petroleum, or any of its products, water and

other substances and such drips, valves, fittings, meters and other equipment and appurtenances as may be necessary or convenient for such operations.... As part of the consideration hereof, [Appellant] agrees, upon Grantor's written request therefor, to make a tap upon its gas pipeline constructed hereunder at a point nearest the principal dwelling house now on said land, and sell, or cause to be sold, to Grantor at said connection natural gas for domestic purposes in the principal dwelling house now on said land under and subject to such [Appellant's] rules and regulations now and from time to time hereafter governing such sales, at the price from time to time charged domestic consumers of natural gas from this or [Appellant's]pipeline and continue to so sell, or cause to be sold, such gas as long as [Appellant] transports gas through said pipeline, all subject to governmental restrictions upon the sale, delivery and use of natural gas.

And also from time to time additional such pipe lines and appurtenances together with the right of ingress and egress at convenient points for such purposes; together with all rights necessary for the convenient enjoyment of the privileges herein granted.

In 1968, Appellant's predecessor in interest installed a twenty-inch pipeline underneath the property subject to the easement. The pipeline is buried four to six feet underneath the ground, and is part of a natural gas conveyance system that "runs from McDonald County, Missouri, up to [Appellant's] Saginaw compressor station just on the south side of Joplin," and has "a maximum operating pressure of 900 pounds." The pipeline is classified as a "high pressure" line and the record reveals, "just for a perspective, a typical house delivery [line] is a half a pound. So this [pipeline] is 1,800 times greater than what somebody would have in their house."

The modular home was on the real property at the time Respondent purchased the property in 1999 and Respondent testified he believed it had been at that location since at least 1992. After purchasing the property in 1999, Respondent did not move the modular home, which at that time was without foundation and was merely sitting on concrete blocks.

Respondent also testified that during the first year he owned the property representatives from Appellant's predecessor in interest visited his property to make inspections, but never mentioned the modular home was too close to the pipeline.

In September of 2000, Respondent moved into the home with his girlfriend and her two daughters; they began remodeling the home and Respondent eventually spent about $60,000.00 making improvements to it, including pouring a foundation for the home in 2001. After Respondent's girlfriend called "Dig–Rite" in preparation for the pouring of the footing for the foundation, representatives from Appellant's predecessor in interest visited Respondent's property again. At that time, using yellow paint, the company marked the gas line about five feet from the residence.[1] According to Respondent, he discussed the pipeline with the company representatives at that time, and again they did not mention the home was too close to the pipeline. Thereafter, Respondent added a porch, stairs, a new roof, and additional rooms to the home.

---

1. The record suggests that the pipeline runs almost parallel to the end of Respondent's home and is variously described in the record as being five feet away from the home, three feet away from the home, and eight inches away from the home.

The record also shows that Appellant sent Respondent a form letter on March 12, 2004, informing him that

> [a]s part of maintaining a safe and reliable pipeline system ... it is necessary for [Appellant] to clear all or part of its right-of-way of brush, trees and debris that interfere with the effective inspection and patrol of its pipeline system. During this project, [Appellant] will be clearing approximately 33 feet centered over the pipeline ... The end results [sic] will be a cleared corridor that is accessible by maintenance crews and enhances the effectiveness of aerial patrol.

Appellant's representatives then visited Respondent on several occasions; each time Respondent prevented them from cutting any trees or brush on his property.

On May 27, 2004, Respondent received another letter from Appellant regarding the clearing of its easement right-of-way. The letter stated:

> Incumbent on [Appellant], as a prudent and safety conscious operator of an interstate natural gas pipeline system, is the periodic obligation and right to keep clear its Rights–of–Way and easements of brush, trees and debris that might interfere with the effective inspection, patrol, operation and maintenance of its system, to assure that the pipeline remains safe to the general public ... In your particular case, [Appellant] has the need to remove 8–10 trees from your property which have been determined by [Appellant] to be a potential hazard to the continued safety of the pipeline that runs through your property. It is my understanding that you have stated that to accomplish that necessary work that [Appellant] 'will have to get a court order.' By this letter, [Appellant] wants to inform you that the clearing crew will be on your property on June 15, 2004, to perform such clearing. I trust that this

can be performed without [Appellant] having to resort to seeking the assistance of the courts.

On June 16, 2004, Appellant filed its "Verified Petition for Preliminary Injunction" against Respondent. In its petition, Appellant stated, in part, that

> 7. Eight to ten trees have grown on top of the pipeline or within ten (10) feet of [Appellant's] pipeline, and [Respondent] has placed a mobile home on top of the pipeline or within thirty-three (33) feet of [Appellant's] pipeline on the Subject Property. . . .
>
> 8. Such trees and mobile home located on top of or very near [Appellant's] pipeline materially interfere with [Appellant's] maintenance and inspection of the Easement, and pose a grave threat to public safety, as follows: (a) [Appellant] monitors the pipeline through overhead, aerial inspections. The location of trees and of [Respondent's] mobile home on top of the pipeline significantly impairs [Appellant's] surveillance of the pipeline and ability to monitor the integrity of the pipeline; (b) such obstructions necessarily make it significantly more difficult for [Appellant's] personnel to access and excavate the pipeline, valves, and appurtenances for repairs and routine maintenance; and (c) the trees at issue are a type that has a tendency to topple over from dryness or wind, bringing large root balls up with them and possibly creating a dangerous situation and/or jeopardizing the integrity of the pipeline.

The petition also sets out that "[t]he trees and mobile home referenced above materially and substantially interfere with [Appellant's] [e]asement rights and its ability to properly monitor, inspect and maintain its pipeline, and pose a grave threat to public safety ..." and that the trees and mobile home "may cause irrepa-

rable harm to [Appellant]." Appellant prayed that the trial court would enter an injunction "[r]estraining and enjoining [Respondent] ... from interfering in any manner with [Appellant's] removal of the eight to ten trees and of [Respondent's] mobile home from on top of [Appellant's] pipeline, or within thirty-three (33) feet thereof...."[2] Appellant also prayed that Respondent be permitted thirty days in which to voluntarily move the mobile home, and that if Respondent did not comply within that time frame, Appellant would thereafter be permitted to re-locate the mobile home itself. Appellant also sought the trial court's grant of a "temporary restraining order to the same effect."

Following a hearing on the temporary restraining order, on June 16, 2004, the trial court granted Appellant's request and ordered that Respondent be prohibited from interfering with the removal of the trees, and that he had until July 14, 2004, to move the mobile home voluntarily. The temporary restraining order was later dissolved by the trial court on October 4, 2004.

In his answer to Appellant's petition, Respondent raised the affirmative defense of estoppel and asserted the trees and mobile home had been in the same location for a number of years and Appellant had knowledge of their existence, thus, Appellant was estopped from now demanding they be moved. Respondent also set out that if Appellant were allowed to move the trees and mobile home, Respondent should receive "just compensation ... in excess of One Hundred Thousand Dollars ($100,000.00)," in addition to attorney fees and costs.

At trial, Gary Hines ("Hines"), Appellant's district manager, testified that he often deals with encroachment issues. Hines testified that the easement language contained in Respondent's deed was typical of the language employed in the pipeline business at the time the easement was created. Hines stated that his concern about the proximity of the pipeline to Respondent's home was for the "general safety" of Respondent and the other people residing in the home. Hines also related Appellant was asserting it needed thirty-three feet on *either* side of the pipeline, "[b]ased on standard construction practices and in maintenance," and was being used by Appellant as a "standard minimal requirement distance...." Hines also stated that his company performs at least an annual leak survey and at least an annual inspection "for construction, soil disturbances, [and] land movement...." Hines testified that such inspections are performed by use of a helicopter in which Appellant's employees look for places that might indicate a pipe leak, such as areas with dead vegetation. According to Hines, there had not been a problem with the location of the home at issue until Respondent poured the foundation to the home, thus, making it a permanent structure. Hines also related that in dealing with permanent structures that have foundations there is a concern that if there were to be a gas leak, the leaking gas could accumulate underneath the structure, thereby creating safety concerns.

As for the trees at issue, Hines stated that in addition to the trees causing problems with Appellant's ability to "get access to the pipe ..." there is a concern that if there were a leak Appellant would have to waste time removing the trees in order to

**2.** As best we discern, there is no evidence in the record that the home at issue was actually located "on top of [Appellant's] pipeline...."

repair the pipeline. Furthermore, Hines related that

> if something were to happen to one of those trees, whether it's the wind blowing it over or excessive rain cause the ground to become so moist that a tree were to fall over, then based on the depth of that pipeline there could be some integrity issues with the pipeline as far as disturbing the soil around the pipe if a tree were to fall over.

Hines went on to state that moving the pipeline was not a valid option because it would cost in excess of $300,000.00.

The trial court ultimately found that Appellant was "entitled to the relief prayed for in it's [sic] Petition in regard to the six (6) trees identified in [Appellant's] Exhibit '7,'" but that Appellant was "not entitled to the relief prayed for in it's [sic] Petition in regard to [its] request for removal of [Respondent's] residence/mobile home." The trial court then decreed that Appellant's "Petition for Injunction in regard to the six (6) trees ... be and is hereby made permanent," and ordered Appellant at its "sole cost and expense, to remove the six trees ..." in question "and to clear [Respondent's] property of all refuge, stumps and debris resulting from the cutting down and removal of said six (6) identified trees." Furthermore, the trial court decreed that Appellant's "request for permanent injunction in regard to the moving of [Respondent's] residence/mobile home, be and is hereby denied." This appeal by Appellant followed.

■ "An action seeking an injunction is an action in equity." *Systematic Bus. Servs. Inc. v. Bratten*, 162 S.W.3d 41, 46 (Mo.App.2005). "The standard of review in a court-tried action in equity is that of a judge tried case: the trial court's judgment will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, it erro-

neously declares the law, or unless it erroneously applies the law." *Id; Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). When setting aside a judgment on the ground that it is against the weight of the evidence, appellate courts should proceed with caution. *Murphy*, 536 S.W.2d at 32. An appellate court should set aside a decree or judgment on the ground that it is against the weight of the evidence only if it has a firm belief that the decree or judgment is wrong. *Id.* "When reviewing a court-tried case, we view all evidence and inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences." *Ortmann v. Dace Homes Inc.*, 86 S.W.3d 86, 88 (Mo. App.2002). We defer to the trial court's determinations as to the credibility of witnesses. *Id.* We review a trial court's decision to grant an injunction under an abuse of discretion standard. *Colbert v. Nichols*, 935 S.W.2d 730, 734 (Mo.App.1996).

Appellant's first point relied on contends that "[t]he trial court's judgment works an impermissible partial 'taking' of [Appellant's] vested property rights and [Appellant] is entitled to an injunction due to [Respondent's] willful encroachment."

■ We immediately observe that "[t]he relief granted in a judgment is limited to that sought by the pleadings or else tried by the express or implied consent of the parties." *City of Kansas City v. New York–Kansas Bldg. Assocs., L.P.*, 96 S.W.3d 846, 853 (Mo.App.2002). "The powers of a court of equity to adjudicate are broad but limited to the claim for relief and issues made by the pleadings." *Id.*

■ Here, in its pleadings, Appellant did not allege that Respondent's actions amounted to an "impermissible partial 'taking' of [Appellant's] vested property rights...." Additionally, the issue of a

"partial taking" was not raised before the trial court.

■ The issue of whether there has been a taking of a person's property is a constitutional issue. The "[t]aking of private property for private use is a violation of Article I, Section 28 of the Missouri Constitution."[3] *Ridgway v. TTnT Devel. Corp.*, 26 S.W.3d 428, 434 (Mo.App.2000). "To properly raise a constitutional issue, a party must: (1) raise it at the first available opportunity; (2) designate specifically the constitutional provision claimed to have been violated; (3) state the facts showing the violation; and (4) preserve the constitutional question throughout for appellate review." *Laubinger v. Laubinger*, 5 S.W.3d 166, 173 (Mo.App.1999). " 'Constitutional issues are waived unless raised at the earliest possible opportunity consistent with orderly procedure.' " *Smith v. Shaw*, 159 S.W.3d 830, 836 (Mo. banc 2005) (quoting *Hollis v. Blevins*, 926 S.W.2d 683, 683 (Mo. banc 1996)). Neither in its pleadings nor at trial did Appellant raise the constitutional issue it now espouses. Thus, it is not preserved for our review. *Id.; see New York–Kansas Bldg. Assoc., L.P.*, 96 S.W.3d at 854. Point denied.

In its second point relied on, Appellant asserts trial court error based on its refusal "to enforce [Appellant's] Easement because it is undisputed that the Easement is valid; no evidence was presented at trial to challenge the reasonableness of the sixty-six foot Easement; and [Respondent's] house substantially impairs the Easement."

■ As best we can discern from Appellant's second point relied on, Appellant appears to be challenging the evidence upon which the trial court based its judgment. As previously related, when reviewing a court-tried case, we view all evidence and inferences in the light most favorable to the judgment and disregard all contrary evidence and inferences. *Ortmann*, 86 S.W.3d at 88. Based on the foregoing, we find there was substantial evidence to support the trial court's judgment.

■ "As a general rule 'a party holding an easement with a right to use the land for a particular stated purpose does not hold title to the property affected by that easement.' " *Helgeson v. Ochs*, 988 S.W.2d 545, 547–48 (Mo.App.1999) (quoting *Baum v. Glen Park Props.*, 660 S.W.2d 723, 726 (Mo.App.1983)). "An easement, strictly speaking, does not carry any title to the land over which it is exercised; it is rather a right to use the land for particular purposes." *Blackburn v. Habitat Dev. Co.*, 57 S.W.3d 378, 389 (Mo.App.2001) (internal quotations omitted).

A landowner whose property is affected by an easement may not use the property in a manner inconsistent with the terms of the easement; however, the servient estate's owner retains the rights of full dominion and use of the land 'except so far as a limitation thereof is essential to the reasonable enjoyment of the dominant estate.'

*Tsevis v. J & F Indus., Inc.*, 51 S.W.3d 91, 93 (Mo.App.2001) (quoting *Baum*, 660 S.W.2d at 72).

**3.** Article I, Section 28 of the Constitution of Missouri sets out:

That private property shall not be taken for private use with or without compensation, unless by consent of the owner, except for private ways of necessity, and except for drains and ditches across the lands of others for agricultural and sanitary purposes, in the manner prescribed by law; and that when an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be judicially determined without regard to any legislative declaration that the use is public.

Mo. Const. art. 8, § 28 (1945, amended 1976).

▮ "The general rule applicable to descriptions in conveyances of easements holds that where the conveyance does not definitely fix the location of the easement, the grantee is entitled to a convenient, reasonable and accessible way within the limits of the grant." *Edward Runge Land Co. v. Busch*, 594 S.W.2d 647, 650 (Mo. App.1980); *see also Hall v. Allen*, 771 S.W.2d 50, 53 (Mo. banc 1989) (holding that "[i]f the location is not precisely fixed when the easement is first created, the grantee is entitled to a convenient, reasonable and accessible use"). As such,

> 'if an easement in land is created in general terms but without giving a definite location and description, a selection may be inferred within the boundaries of the land over which the right is granted *by proof of the use of a particular course or way on the part of the grantee or owner of the dominant estate* along with the acquiescence of the grantor or owner of the servient estate.'

*Helgeson*, 988 S.W.2d at 548 (quoting *Edward Runge Land*, 594 S.W.2d at 650 (emphasis added)); *see also Superlube, Inc. of Camdenton v. Innovative Real Estate, Inc.*, 94 S.W.3d 480, 484 n. 8 (Mo.App. 2003). " 'Where no definite location is given as to the easement, the course over which it is to be exercised can be fixed in either of two ways, that is, by express agreement or by a selection that can be inferred by proof of the use of a particular way.' " *Helgeson*, 988 S.W.2d at 548 (quoting *Edward Runge Land*, 594 S.W.2d at 650); *see Williams Pipeline Co. v. Allison & Alexander, Inc.*, 80 S.W.3d 829, 836 (Mo.App.2002) (recognizing that "a general easement can be converted to a fixed easement based on the parties' intent, as evi-

denced by their conduct and original use of rights granted").

▮ In cases such as the present one, where an easement is undefined in its length and extent, the law is clear that we look at the use to which Appellant has put the easement in order to determine its boundaries. *See Helgeson*, 988 S.W.2d at 548.

In our review, we note, as pointed out by Respondent's counsel at oral argument, the initial letter received by Respondent from Appellant stated that it would "be clearing *33 feet centered over the pipeline.*" (Emphasis added). Then, in its petition and at trial, Appellant maintained it needed thirty-three feet *on either side of the pipeline* or sixty-six feet in total to be able to properly maintain the pipeline. Appellant's expert witness, Hines, testified that there was no specific reason as to why the sixty-six foot easement was necessary, except that it appeared to the company to be a "standard minimal requirement distance ..." for the company to be able to get near the pipeline to make repairs. Hines acknowledged that the home had been located on the property at its present location since at least 1992, when Appellant's predecessor in interest installed "the tap for the structure" in order to access gas from the pipeline. Accordingly, by Appellant's own admission, what it now claims as its easement has had this structure encroaching upon it with its knowledge for over twelve years before it filed suit.

Additionally, Appellant's employee also admitted it inspected the pipeline on at least an annual basis and had never, prior to this litigation, requested that the home or any trees be removed from the easement, nor had Appellant ever entered the property and removed any trees that ostensibly encroached on the easement.[4]

---

4. There was testimony by an arborist at trial that the trees on the easement ranged in age from 32 to 62 years of age.

Further, there was no evidence Appellant had ever had to make repairs to the pipeline or affixed anything to the pipeline, except during the installation of the pipeline in 1968 and the installation of the "tap" in 1992.

■ With that being said, the trial court made no express findings of fact and conclusions of law in this case, nor were any requested by either party. As such, we "may not speculate as to the grounds on which a trial court bases its ruling." *Kunkel v. Kunkel,* 84 S.W.3d 557, 560 (Mo. App.2002). It appears from the face of the judgment that the trial court found that Appellant had an undefined easement, but that the evidence did not necessitate the relocation of Respondent's home.

■ Whether an injunction should be granted is a matter of the trial court's discretion in balancing the equities. *Heinrich v. Hinson,* 600 S.W.2d 636, 640 (Mo. App.1980). "In 'balancing the equities,' the trial court is to consider all the equities between the parties as disclosed by the circumstances of the case." *Edmunds v. Sigma Chapter of Alpha Kappa Lambda Fraternity, Inc.,* 87 S.W.3d 21, 29 (Mo. App.2002). "The issuance of injunctive relief, along with the terms and provisions thereof, rests largely within the sound discretion of the trial court." *Id.* The trial court "is vested with a broad discretionary power to shape and fashion the relief it grants to fit particular facts, circumstances, and equities of the case before it." *Id.* (internal quotations omitted). As stated in *Heinrich,* 600 S.W.2d at 640–41,

> In 'balancing the equities' consideration is given to all the equities between the parties as disclosed by the circumstances of each particular case and the conflicting conveniences of the respective parties, the willfulness of the encroaching party, and the conduct of the party whose land has been encroached upon regarding acquiescence and laches are some of the factors to be weighted in 'balancing the equities.'

see also *Ridgway,* 26 S.W.3d at 433. Based on the evidence presented at trial we cannot say that the trial court abused its discretion in fashioning the remedy that it decreed. *Colbert,* 935 S.W.2d at 734. Point denied.

Appellant's third point relied on maintains "[t]he trial court erred in that the judgment refusing to enforce [Appellant's] Easement as to [Respondent's] house is inconsistent with the judgment as to [Respondent's] trees." Appellant goes on to explain that "[t]he judgment recognizes the validity of [its] Easement by ordering removal of [Respondent's] trees, but then would force [Appellant] to operate its pipeline without sufficient space to properly monitor, inspect, and repair it, and in an unsafe condition with [Respondent's] house only a few inches or feet away."

Again, reviewing the evidence and inferences in the light most favorable to the judgment, we find that the trial court's judgment was not inconsistent as asserted by Appellant. *See Ortmann,* 86 S.W.3d at 88. The evidence here revealed that Appellant monitors the pipeline by flying over the pipeline in a helicopter on a regular basis. The trees at issue, which range in diameter from twelve inches to twenty-eight inches, could be seen as a substantial hindrance to Appellant's aerial visibility of the pipeline. Additionally, the evidence showed that root growth could adversely affect the pipeline, and that soil disturbance caused by the possibility of trees falling down could be injurious to the integrity of the pipe. Also, Hines testified that in the event of a leak the trees could present a problem because they would have to be removed at that time in order to properly repair the pipe.

On the other hand, based on our review of the evidence, Respondent's home does not lay on the pipeline and, thus, does not impede Appellant's visual inspection, nor does it lay close enough to substantially interfere with the proper repair of the pipeline in the event of a leak. It appears that any repairs that may need to be made in the future could be made from the side of the pipeline opposite from Respondent's house or in the area between Respondent's house and the pipeline. In holding as it did, the trial court ordered the trees to be removed, but allowed the home to stay in the location in which it had been sitting for over twelve years. This is not an inconsistent judgment. Appellant here requested an injunction and it was within the trial court's discretion to "fashion [its injunctive] relief ... to fit particular facts, circumstances, and equities of the case before it." *Edmunds,* 87 S.W.3d at 29 (internal quotations omitted). Based on the evidence presented we cannot say that the trial court abused its discretion in its judgment. Point denied.

 Fourth, Appellant asserts "[t]he trial court erred in determining that [Appellant] was estopped from enforcing its Easement rights because [Respondent] failed to establish the essential elements of estoppel and because he willfully encroached upon [Appellant's] pre[-]existing Easement."

Again, we note that "[t]his court may not speculate as to the grounds on which a trial court bases its ruling." *Kunkel,* 84 S.W.3d at 560. Here, the trial court made no ruling on whether Respondent was encroaching on the easement, nor did it rule that Appellant "was estopped from enforcing its Easement rights...." While Respondent did raise the affirmative defense of estoppel in its answer to Appellant's

petition, there is nothing in the trial court's judgment which sets out that the trial court concurred with Respondent's affirmative defense of estoppel. As there is nothing in the judgment to support Appellant's point of error, Appellant's fourth point is denied.[5]

The judgment of the trial court is affirmed.

SHRUM, P.J., and BATES, C.J., concur.

---

5. All pending motions are also denied.